## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GOLDKING HOLDINGS, LLC, et al.,[1] | Case No. 13-12820 (BLS) |
| | Jointly Administered |
| Debtors. | **Ref. Docket No. 11** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POST-PETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, AND (6) SCHEDULING A FINAL HEARING

THIS MATTER having come before the Court upon the motion (the "**Motion**") of Goldking Resources, LLC ("**Goldking Resources**" or "**Borrower**"), Goldking Onshore Operating, LLC ("**Goldking Operating**"), and Goldking Holdings, LLC ("**Goldking Holdings**", and together with Goldking Operating, collectively the "**Guarantors**", and the Guarantors together with Goldking Resources, collectively the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an Interim Financing Order (the "**Interim Financing Order**") and a Permanent Financing Order (the "**Permanent Financing Order**"), seeking, among other relief:

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Goldking Holdings, LLC (2614); Goldking Onshore Operating, LLC (2653); and Goldking Resources, LLC (2682). The mailing address for the Debtors is 777 Walker Street, Suite 2500, Houston, TX 77002.

(1)      authorization for Debtors to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as defined below) from Wayzata Opportunities Fund II, LP, (the "**Agent**") as successor administrative agent to Bank of America, N.A. ("**BOA**"), in accordance with the terms and conditions set forth in the Existing Credit Agreement (as defined below), as amended and ratified by the Ratification Agreement (as defined below), and in accordance with this Interim Financing Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code;

(2)      authorization for Debtors to enter into the Ratification and Amendment Agreement, dated of even date herewith, by and among the Borrower, the Guarantors, and Lender (the "**Ratification Agreement**", a copy of which is included in the Exhibits to the Motion and is fully incorporated herein), which ratifies, extends, adopts and amends the Existing Credit Agreement and the other Existing Credit Documents (as defined below);

(3)      an order vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the relief requested herein;

(4)      the grant to Agent of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Post-Petition Obligations (as defined in the Ratification Agreement); and

(5)      the setting of a final hearing on the Motion (the "**Final Hearing**").

The initial hearing on the Motion having been held by this Court on October 31, 2013 (the "**Interim Hearing**"); and the Court having considered the Motion, the Declaration of

2

Edward Hebert in Support of the Chapter 11 Petitions and First Day Pleadings, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and the Court having found that the notice of the Interim Hearing has been provided in accordance with the Bankruptcy Rules, Local Rules and the Bankruptcy Code, as set forth in Paragraph D; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

   A. <u>Petition</u>. On October 30, 2013 (the "**Petition Date**"), Debtors filed voluntary petitions (the "**Petitions**") under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

   B. <u>Jurisdiction and Venue</u>.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b) (2).  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Debtors' Stipulations</u>.  After consultation with their attorneys and financial advisors, and subject to Section 4.1 of this Interim Financing Order, each Debtor hereby admits, stipulates, acknowledges and agrees that:

(i)    *Existing Credit Documents*.  Prior to the commencement of the Case, Borrower entered into that certain Credit Agreement, dated November 5, 2010, by and among Borrower, the Guarantors, the financial institutions named therein, as banks, BOA, as administrative agent and issuing bank, and Banc of America Securities LLC, as lead arranger and book manager (as the same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "**Existing Credit Agreement**," a copy of which is attached to the Motion in the Exhibits).[2]  Pursuant to the Assignment and Acceptance (the "**Assignment and Acceptance**"), the Resignation, Assignment and Release Agreement (the "**Resignation**"), and the Release Agreement (the "**Release**", and together with the Assignment and Acceptance and the Resignation, each as amended, modified or supplemented from time to time, collectively the "**Assignment**"), each dated as of January 24, 2013, by and among Borrower, the Guarantors, BOA, and Agent (referred to hereinafter as the "**Lender**"), BOA assigned, sold and delegated all of its rights and obligations under the Existing Credit Agreement to Lender.  The Assignment was a valid, binding and enforceable Assignment of the Existing Credit Agreement's rights and obligations from BOA to Lender. Prior to the Petition Date, Lender made loans, advances and provided other financial accommodations to Borrower pursuant to the terms and conditions set forth in (1) the Existing Credit Agreement,

---

[2]  Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Motion and the Existing Credit Agreement, as amended and ratified by the Ratification Agreement (as defined herein).

and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Lender, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto, as assigned by BOA to Lender pursuant to the Assignment  (all of the foregoing, together with the Existing Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "**Existing Credit Documents**").   Copies of the operative Existing Credit Documents are contained in the Exhibit Supplement.

(ii)    *Pre-Petition Obligations Amount.*  As of the Petition Date, the aggregate amount of all obligations owing by Borrower to Lender under and in connection with the Existing Credit Documents was not less than $11,582,729.51, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is more fully defined in the Ratification Agreement, the "**Pre-Petition Obligations**").    The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations.

(iii)    *Pre-Petition Collateral.*  As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Existing Credit Documents by valid, perfected,

5

enforceable and non-avoidable first priority security interests and liens granted by Debtors to Lender upon all of the Pre-Petition Collateral, subject only to the liens specifically listed on Schedule 6.1 of the Existing Credit Agreement or permitted under Section 6.1 of the Existing Credit Agreement or applicable law to the extent that such security interests, liens or encumbrances are (a) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (b) senior to and have not been or are subject to being subordinated to Lender's liens on and security interests in the Pre-Petition Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (the "**Permitted Encumbrances**").  The Debtors will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Lender's liens, claims or security interests in the Pre-Petition Collateral.

(iv)    *Proof of Claim.*    Upon entry of a Permanent Financing Order providing for such relief, the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Lender as set forth herein and in the Existing Credit Documents shall be deemed a timely filed proof of claim on behalf of Lender in this Case.

D.    Findings Regarding the Post-petition Financing.

(i)    *Post-petition Financing.*  The Debtors have requested from Lender, and Lender is willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth, in this Interim Financing Order and the Credit Documents (as defined below).

(ii)    *Need for Post-Petition Financing.*  The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their

6

businesses in the ordinary course of their business without the financing requested under the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with Lender as set forth in this Interim Financing Order and the Credit Documents is vital to the preservation and maintenance of the going concern values of the Debtors and/or the Debtors' ability to conduct an orderly liquidation and/or sale of its assets to maximize the value thereof.  Accordingly, the Debtors have an immediate need to obtain post-petition financing in order to, among other things, permit the orderly continuation of the operation of its businesses, minimize the disruption of its business operations, and preserve and maximize the value of their assets in order to maximize the recovery to all creditors of the Debtors.

(iii)    *No Credit Available on More Favorable Terms*.  The Debtors are unable to obtain financing from sources other than Lender on terms more favorable than the Existing Credit Agreement.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting the Lender, (1) perfected security interests in and liens on (each as provided herein) all of the Post-Petition

7

Collateral (2) superpriority claims, and (3) the other protections set forth in this Interim Financing Order.

(iv)    *Budget.* The Debtors have prepared and delivered to Lender an initial Budget (as defined in the Ratification Agreement). Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the Projected Information for the periods covered thereby. The Debtors represent that the Budget is achievable in accordance with the terms of the Credit Documents and this Order. Lender is relying upon the Debtors' compliance with the Budget in accordance with Section 5.3 of the Ratification Agreement, the other Credit Documents and this Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the Credit Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the prudent business judgment of the Debtors, consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the Credit Documents and this Order have been negotiated in good faith and at arms' length by and among Borrower and Guarantors, on one hand, and the Lender, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the Lender as that term is used in Section 364(e) of the Bankruptcy Code.

(vi)    *Good Cause.* The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their respective estates, as its implementation will, among other things, provide the Debtors

RLF1 9509897v.6

with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(vii)  *Notice.*  The telephonic, facsimile, overnight mail and/or hand delivery notice of the Interim Hearing, seeking entry of the Interim Financing Order granting the Motion, has been provided to certain parties in interest, including: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors; and (vi) counsel to the Lender.  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Financing Order, and no other or further notice is or shall be required.

(viii)  *Immediate Entry.*  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).  Absent entry of this Interim Financing Order, the Debtors' business, properties and estates will be immediately and irreparably harmed. Accordingly, this Court concludes that entry of this Interim Financing Order is necessary to avoid immediate and irreparable harm to the Debtors, and is in the best interests of the Debtors' estate and creditors.  Any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

(ix)  Based upon the foregoing, and after due consideration and good cause appearing therefor,

9

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.    The Motion is **GRANTED** on an interim basis in accordance with Bankruptcy Rule 4001(c)(2), subject to the terms and conditions set forth herein.

1.2    Authorization to Borrow and Use Loan Proceeds.    Debtors are hereby authorized and empowered on an interim basis to immediately borrow, obtain and incur indebtedness and obligations owing to Lender pursuant to the terms and conditions of this Interim Financing Order, the Existing Credit Agreement, as ratified and amended by the Ratification Agreement (the "**Credit Agreement**," as such term is more fully defined in the Ratification Agreement), and the other Existing Credit Documents, as ratified and amended by the Ratification Agreement (the "**Credit Documents**," as such term is more fully defined in the Ratification Agreement), during the period commencing on the date of this Interim Financing Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Financing Order (the "**Interim Financing Period**"), in such amounts as may be made available to Borrower by Lender in accordance with Budget.    Subject to the terms and conditions contained in this Interim Financing Order and the Credit Documents, including Section 5.2 of the Ratification Agreement, Debtors shall use the proceeds of the Loans and any other credit accommodations provided to or for the benefit of Debtors pursuant to this Interim Financing Order, the Credit Agreement or the other Credit Documents for, inter alia, the payment of employee salaries, payroll, taxes, and all other expenses specified in the Budget for other operating and working capital purposes, including, without limitation, the Hedging Obligations (including any amounts for the Hedging Obligations related to the period prior to the Petition

10

Date), in the ordinary course of Debtors' business in accordance with the Credit Documents, including the fees of the U.S. Trustee, the Clerk of this Court and, subject to Section 2.3 of this Interim Financing Order, Allowed Professional Fees (as defined below).

### 1.3    Credit Documents

1.3.1    Authorization.    Debtors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement, the other Credit Documents and all other agreements, documents and instruments executed or delivered in connection with or related to the Credit Agreement, the other Credit Documents or this Interim Financing Order, including, without limitation, the Ratification Agreement, pursuant to which, inter alia, Debtors ratify, reaffirm, extend, assume, adopt, amend, and restate the Existing Credit Agreement and the other Existing Credit Documents to which they are a party, including, any lockbox, blocked depository bank account arrangements or other cash management systems provided under the Credit Agreement (collectively, the "**Account Control Agreement**").

1.3.2    Approval.    The Credit Documents (including, without limitation, the Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Financing Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among Debtors and Lender, and of Debtors' assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement and the other Credit Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees,

11

unused line fees, DIP Facility Fee, closing fees, early termination fees, and other fees and expenses, including, without limitation, all of Lender's consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Credit Documents.

       1.3.3   <u>Amendment.</u>  Subject to the terms and conditions of the Credit Agreement and the other Credit Documents, Debtors and Lender may amend, modify, supplement or waive any provision of the Credit Documents (an "**Amendment**") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the Credit Documents, increase the Availability (as defined in the Credit Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to the Lender following an event of default, or otherwise modify any terms and conditions in any Credit Document in a manner materially less favorable to Debtors) and is undertaken in good faith by Lender and Debtors; (ii) the Debtors provide prior written notice of the Amendment (the "**Amendment Notice**") to (a) the U.S. Trustee and (b) counsel to any official committee appointed in the Case under Section 1102 of the Bankruptcy Code (collectively, the "**Committee(s)**"), or in the event no such Committee is appointed at the time of such Amendment, the 30 Largest Unsecured Creditors; (iii) Debtors file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this Section.  Any material Amendment to the Credit Documents must be approved by the Court to be effective.

       1.4   <u>Payment of Prepetition Debt</u>.  At the Final Hearing, the Debtors will seek entry of a Permanent Financing Order, in form and substance acceptable to Lender, approving

the proposed post-petition financing arrangements, seeking, among other relief, authorization of the Debtors to pay Lender in respect of all Pre-Petition Obligations in accordance with the Credit Documents and Sections 1.5 and 1.6 of this Interim Financing Order.  Notice of the Final Hearing and Permanent Financing Order will be provided in accordance with this Interim Financing Order.

> 1.5    <u>Payments and Application of Payments</u>.  The Debtors are authorized to make all payments and transfers of estate property to Lender as provided, permitted and/or required under the Credit Agreement and the other Credit Documents, which payments and transfers, subject to Section 4.1 herein, shall not be avoidable or recoverable from Lender under Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral received by Lender, and any other amounts or payments received by Lender in respect of the Obligations, shall be applied or deemed to be applied by Lender in accordance with the Credit Agreement, the other Credit Documents and this Interim Financing Order first to the Post-Petition Obligations, until such Post-Petition Obligations are indefeasibly paid in full and completely satisfied or the Court enters the Permanent Financing Order authorizing the Debtors to pay Lender in respect of all Pre-Petition Obligations.  Without limiting the generality of the foregoing, the Debtors are authorized, without further order of this Court, provided that copies of the invoices have been delivered to the Office of the U.S. Trustee and counsel to any official committee(s) appointed in this case, to pay or reimburse Lender for all present and future costs and expenses, including, without limitation, the DIP Facility Fee subject to the terms and conditions set forth in the Ratification Agreement, all professional fees, consultant fees and legal fees and expenses paid or incurred by

13

Lender in connection with the financing transactions as provided in this Interim Financing Order and the Credit Documents, all of which shall be and are included as part of the Obligations and secured by the Collateral.

      1.6    Continuation of Pre-petition Procedures.  All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to Lender and the funding pursuant to the Credit Documents, including the Account Control Agreement, and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Case.

      1.7    Post-financing Milestones.

      1.7.1  Not later than ninety (90) days after the Petition Date, an order in form and substance satisfactory to Lender (the "**Bidding Procedures Order**") shall have been entered by the Court authorizing and approving an auction and auction procedures for the selection of a liquidator and/or a going concern purchaser in connection with any potential sale of the business and assets of Borrower and Guarantors (if applicable) in any liquidation and/or going concern sales, as applicable, to the highest and best bidder, on terms and conditions reasonably acceptable to Lender.

      1.7.2  Not later than sixty (60) days after the date the Court enters the Bidding Procedures Order, an order in form and substance reasonably satisfactory to Lender (the "**Sale Order**") shall have been entered by the Court approving the selection of a liquidator and/or a going concern purchaser and the sale of the business and/or assets of the Borrower and Guarantors (if applicable) to such liquidator and/or going concern purchaser, in each case on terms and conditions reasonably acceptable to Lender.

14

1.7.3    Any liquidation or going concern sales shall be consummated, not later than the one hundred fiftieth day (150th) day following the Petition Date on terms and conditions reasonably acceptable to Lender.

1.7.4    Not later than one hundred ten (110) days after the Petition Date, Borrower and Guarantors shall have filed with the Court a disclosure statement and a plan of reorganization or liquidation (as applicable), and motion and proposed form order (in form and substance satisfactory to Lender) seeking approval of Court, on terms and conditions acceptable to Lender or which provides for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions therein.

1.7.5    Not later than one hundred fifty (150) days after the Petition Date, the Court shall have approved the disclosure statement on terms and conditions acceptable to Lender or which provides for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions therein.

1.7.6    Not later than one hundred eighty (180) days after the Petition Date, the Court shall have confirmed the plan of reorganization or liquidation (as applicable) on terms and conditions acceptable to Lender or which provides for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions therein.

Section 2.      Post-petition Lien and Superpriority Administrative Claim Status.

2.1    Post-Petition Lien.

2.1.1    Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Post-Petition Obligations (and upon entry of a Permanent Financing Order providing for such relief any and all Obligations, including, without limitation, all Pre-Petition Obligations and Post-Petition Obligations) of Debtors to Lender of whatever kind,

15

nature or description, absolute or contingent, now existing or hereafter arising, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, Lender shall have and is hereby granted, effective as of the Petition Date, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected post-petition security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' estates may have (but subject to certain claims entitled to priority, including the Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Section 2.1.2 below), in and upon all of the Pre-Petition Collateral and the Post-Petition Collateral (the Pre-Petition Collateral and the Post-Petition Collateral, together the "**Collateral**").   Notwithstanding the foregoing or anything to the contrary contained in the Credit Agreement, Lender's liens on and security interests in avoidance actions brought under Sections 542, 545, 547, 548, 549 or 550 of the Bankruptcy Code shall secure the Obligations only upon the entry of a Permanent Financing Order providing for such relief.  In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of Obligations secured by such Collateral after satisfaction of the Post-Petition Obligations of Debtors to Lender, shall constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by Debtors, and the diminution in the value, of the Collateral existing on the Petition Date.

2.1.2   <u>Lien Priority</u>.  The pre-petition and post-petition liens and security interests granted by Debtors to Lender under the Credit Documents and this Interim Financing Order in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor

16

of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that Lender's liens on and security interests in the Collateral shall be subject only to (i) the Permitted Liens and (ii) the Carve Out Expenses (as defined below) solely to the extent provided for in Sections 2.3, 2.4 and 2.5 of this Interim Financing Order (the foregoing clauses (i) and (ii) are collectively referred to herein as the "**Permitted Liens and Claims**").

        2.1.3   Post-Petition Lien Perfection.  This Interim Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution that is a party to any agreement related to an Account Control Agreement consisting of Collateral (a "**Perfection Act**").  Notwithstanding the foregoing, if Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Lender is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Financing Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Interim Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept,

file or record such certified copy of this Interim Financing Order in accordance with applicable law.  Should Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Financing Order.

        2.1.4  Nullifying Pre-Petition Restrictions to Post-Petition Financing. Upon entry of the Permanent Financing Order providing for such relief, notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which Debtors are a party or under which the Debtors are obligated, except as otherwise permitted under the Credit Documents, any provision that restricts, limits or impairs in any way Debtors from granting Lender security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which Debtors are a party) under the Credit Agreement, the other Credit Documents or this Interim Financing Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the Credit Documents shall not (i) be effective and/or enforceable against either Debtors or Lender, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted by Debtors to Lender pursuant to this Interim Financing Order or the Credit Documents.

        2.2  Superpriority Administrative Expense.  For all Post-Petition Obligations (and, upon entry of a Permanent Financing Order, for all Obligations, including, without limitation, all Pre-Petition Obligations and all Post-Petition Obligations) now existing or hereafter arising pursuant to this Interim Financing Order, the Credit Documents or otherwise,

RLF1 9509897v.6

Lender is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Permanent Financing Order), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**Superpriority Claim**"), provided, however, the Superpriority Claim shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Financing Order.  The Superpriority Claim will attach to proceeds of avoidance actions brought under Sections 542, 545, 547, 548, 549 or 550 of the Bankruptcy Code only upon the entry of a Permanent Financing Order providing for such relief.

> 2.3    Carve Out Expenses.

> 2.3.1  Carve Out Expenses.    Upon the declaration by Lender of the occurrence of an Event of Default, which is not waived or cured, Lender's liens, claims and security interests in the Collateral and their Superpriority Claim shall be subject only to the right of payment of the following expenses (collectively, the "**Carve Out Expenses**"):

> > a.    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

> > b.    fees payable to the Clerk of this Court; and

> > c.    subject to the terms and conditions of this Interim Financing Order, the unpaid, budgeted and outstanding reasonable fees and expenses actually incurred on or after the Petition Date through the occurrence of an Event of Default, and approved or permitted by an order of the Court pursuant to Sections 326,

19

328, 330, or 331 of the Bankruptcy Code (collectively, the "**Allowed Professional Fees**"), by attorneys, accountants and other professionals retained by the Debtors (collectively, the "**Debtors' Professionals**"), plus an aggregate sum not to exceed $150,000.00 subsequent to the occurrence of an Event of Default (the "**Professional Fee Carve Out**").   The Professional Fee Carve Out shall also apply to the professionals employed by any statutory committee, if appointed.

2.3.2   Excluded Professional Fees.   Notwithstanding anything to the contrary in this Interim Financing Order, neither the Professional Fee Carve Out nor the proceeds of any Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in or any investigation into any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral, or (iii) preventing, hindering or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Interim Financing Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Lender in accordance with the terms and conditions of this Interim Financing Order, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Lender, without the prior written consent of Lender, (d) the commencement or

20

prosecution of any action or proceeding of any claims, causes of action or defenses against Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Lender under Chapter 5 of the Bankruptcy Code, or (e) any act which results in the occurrence of an Event of Default, which is not waived or cured, under the Credit Documents or this Interim Financing Order; provided, however, that any statutory committee, if appointed, may use up to $10,000.00 to investigate the liens of, or claims against, the Lender.

      2.4    <u>Carve Out Reserve</u>.  At Lender's sole discretion, Lender may, at any time and in any increment up to the aggregate amount of the Professional Fee Carve Out and the other Carve Out Expenses in accordance with the Credit Agreement, establish a Reserve against the amount of all credit accommodations that would otherwise be made available to Debtors pursuant to the lending formulae contained in the Credit Agreement in respect of the Professional Fee Carve Out and the other Carve Out Expenses.

      2.5    <u>Payment of Carve Out Expenses</u>.

      2.5.1   Prior to the occurrence of an Event of Default, Debtors shall be permitted to pay Allowed Professional Fees of the Professionals in accordance with the Budget and any such amounts paid prior to the occurrence of an Event of Default shall not reduce the $150,000.00 limitation in the Professional Fee Carve-Out.

      2.5.2   Any payment or reimbursement made either directly by Lender at any time, or by or on behalf of the Debtors on or after the occurrence of an Event of Default which is not waived or cured, in respect of any Allowed Professional Fees or any other Carve Out Expenses (exclusive of the application of any retainers by any of the Professionals) shall, in either case, permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis;

provided, however that to the extent the $150,000.00 limitation on the Professional Fee Carve-Out is reduced by any amount as a result of payment of such fees and expenses on and after the occurrence of an Event of Default, and such Event of Default is thereafter waived in writing by Lender, then upon the effectiveness of such waiver, the amount of the Professional Fee Carve Out shall be increased by an amount equal to the amount by which it was reduced following such Event of Default (but in no event shall the Professional Fee Carve Out exceed $150,000.00). Lender's obligation to fund or otherwise pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made a part of the Obligations, secured by the Collateral, and entitle Lender to all of the rights, claims, liens, priorities and protections under this Interim Financing Order, the Credit Documents, the Bankruptcy Code or applicable law.  Payment of any Carve Out Expenses, whether by or on behalf of Lender, shall not, and shall not be deemed to, reduce the Obligations, and shall not and shall not be deemed to subordinate any of Lender's liens and security interests in the Collateral or their Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Except as otherwise provided herein with respect to the Professional Fee Carve Out and the other Carve Out Expenses, Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4 or 2.5 of this Interim Financing Order shall be construed to obligate Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

2.6    Use of Cash Collateral; Adequate Protection.

2.6.1    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Financing Order, the Credit Agreement and the other Credit Documents, and in accordance with the Budget, Debtors shall be and are hereby authorized to use, until the expiration of Lender's commitment to lend under the Credit Agreement and the other Credit Documents, the Cash Collateral (as defined in Section 363 of the Bankruptcy Code) subject to the pre-petition liens and security interests granted to the Lender.  Nothing in this Interim Financing Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or Debtors' use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Financing Order, the Credit Agreement, the other Credit Documents and in accordance with the Budget.

2.6.2    Replacement Liens.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out-Expenses, the Lender is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "**Replacement Lien**").  The Replacement Lien shall be junior and subordinate only to the Permitted Liens and Claims and the liens and security interests granted to Lender in the Collateral securing the Post-Petition Obligations and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral. Notwithstanding the foregoing or anything to the contrary contained in the

2.6.3    Section 507(b) Priority Claim.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on

Credit Agreement, Lender's liens on and security interests in avoidance actions brought under Sections 542, 545, 547, 548, 549 or 550 of the Bankruptcy Code shall secure the Replacement Lien only upon the entry of a Permanent Financing Order providing for such relief.

23

account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out-Expenses, the Lender is hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of this Case and any conversion thereof to a case under chapter 7 to the extent of such diminution in value (the "**Adequate Protection Superpriority Claim**").    The Adequate Protection Superpriority Claim shall be junior only to the Carve-Out Expenses and shall otherwise have priority over all administrative expense claims under 11 U.S.C. §§ 503(b), 506(c) (upon entry of a Permanent Financing Order providing for such relief, as set forth in Section 4.3 of this order), and 507(b) and unsecured claims against Debtors and their estates now existing or hereafter arising.    The Adequate Protection Superpriority Claim will attach to proceeds of avoidance actions brought under Sections 542, 545, 547, 548, 549 or 550 of the Bankruptcy Code only upon the entry of a Permanent Financing Order providing for such relief.

> 2.6.4    <u>Other Adequate Protection</u>.    As further adequate protection, Debtor is hereby authorized to provide adequate protection to Lender, in the form of: (a) payment of interest, fees and other amounts due under the Existing Credit Documents, at the times specified therein, to Lender, and (b) ongoing payment of the fees, costs and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses, of Lender as required under the Existing Credit Documents.

*[handwritten insertion: in its capacity as post-petition lender]*

**Section 3.**    <u>Events of Default, Rights and Remedies, and Relief from Stay</u>.

> 3.1    <u>Events of Default</u>.    The occurrence of any of the following events shall constitute an "**Event of Default**" under this Interim Financing Order:

24

a.    Debtors' failure to comply with the terms, conditions or provisions under this Interim Financing Order, or an event of default as defined and described elsewhere in this Interim Financing Order occurs; or

b.    An "Event of Default" under the Credit Agreement or any of the other Credit Documents.

3.2    <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, which is not waived or cured, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Financing Order, the Credit Agreement and the other Credit Documents, and (ii) Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Financing Order or any Credit Document, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans or provide or arrange for Letter of Credit Obligations on behalf of Debtors, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3    <u>Expiration of Commitment</u>.  Upon the expiration of Borrower's authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Interim Financing Order and the Credit Documents (except if such authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from

any action, inaction or acquiescence by Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Financing Order, all of the Obligations shall immediately become due and payable and Lender shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Lender pursuant to the terms and conditions of the Credit Documents or this Interim Financing Order, and Lender shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Financing Order, the Credit Documents or applicable law which Lender may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' estates.

      3.4    <u>Relief from Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Interim Financing Order or the Credit Documents, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Financing Order and pursuant to the terms of the Credit Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Credit Documents, and apply such payments to the Obligations pursuant to the Credit Documents and this Interim Financing Order. In addition, and without limiting the foregoing, upon the

occurrence of an Event of Default, which is not waived or cured, and after providing five (5)

business days prior written notice (the "**Enforcement Notice**") to counsel for the Debtors,

counsel for the Committee (if appointed), and the U.S. Trustee, Lender shall be entitled to take

*counsel for Leonard C. Tollerue, Jr.,*

any action and exercise all rights and remedies provided to it by this Interim Financing Order,

the Credit Documents or applicable law as Lender  may deem appropriate in its sole discretion

to, among other things, proceed against and realize upon the Collateral or any other assets or

properties of Debtors' estate upon which Lender has been or may hereafter be granted liens or

security interests to obtain the full and indefeasible repayment of all Obligations.   Nothing

contained in this Interim Financing Order (including Section 3 hereof) shall prevent the Debtors

or any committee appointed in this case from requesting a hearing to contest or challenge the

existence or continuance of an Event of Default.

Section 4.      Representations, Covenants and Waivers.

4.1     Objections to Pre-Petition Obligations.   Any action, claim or defense

(hereinafter, an "**Objection**") that seeks to object to, challenge, contest or otherwise invalidate or

reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or otherwise,

(a) the existence, validity or amount of the Pre-Petition Obligations, (b) the extent, legality,

validity, perfection or enforceability of Lender's pre-petition liens and security interests in the

Pre-Petition Collateral, (c) Lender's right to apply proceeds of Post-Petition Collateral against

Post-Petition Obligations in satisfaction of Lender's post-petition liens as provided for in this

Interim Financing Order, (d) upon entry of the Permanent Financing Order, Lender's right to

apply proceeds of Post-Petition Collateral against Pre-Petition Obligations in satisfaction of

Lender's pre-petition liens as provided for in this Interim Financing Order (provided, however,

that the only grounds for such Objection is that the Pre-Petition Obligations were not fully

27

secured by the Pre-Petition Collateral as of the Petition Date and such application unduly advantaged Lenders), or (e) the Debtors' stipulations set forth in this Interim Financing Order, including the release of all claims against the Lender, shall be filed with the Court (x) by any Official Committee of Unsecured Creditors within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing (including a chapter 7 trustee) within seventy-five (75) calendar days from the date of entry of this Interim Financing Order.  If any such Objection is timely filed and successfully pursued, nothing in this Interim Financing Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations or Lender's liens on the Pre-Petition Collateral.  If no Objection is timely filed, or if an Objection is timely filed but denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims, and (b) the Debtors' stipulations set forth in this Interim Financing Order shall be binding on all parties, and Lender and each of its respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Existing Credit Documents or any action or inaction of Lender prior to the date hereof, including but not limited to, actions or inactions of Lender in Lender's capacity as equity owner of the Debtors, and shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to

28

expand, impair, prejudice or waive any rights, claims or protections afforded to Lender in connection with all post-petition financing and credit accommodations provided by Lender to Debtors in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Financing Order and the Credit Documents.

        4.2      <u>Debtors' Waivers</u>.  Subject to entry of a Permanent Financing Order, at all times during the Case, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek authority (i) to use Cash Collateral of Lender under Section 363 of the Bankruptcy Code, except as otherwise expressly provided for herein, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from Lender or as may be otherwise expressly permitted pursuant to the Credit Agreement, provided, however, that the Lender may consent to the filing of a motion to approve a replacement debtor-in-possession financing which comports with the provisions of Section 5.7 of this Interim Financing Order and indefeasibly pays in full the Obligations in accordance with the terms of the Credit Documents and this Interim Financing Order, (iii) to challenge the application of any payments authorized by this Interim Financing Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Ratification Agreement, (v) to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of Lender's pre-petition and post-petition liens and claims (subject to the rights of the Committee under Section 4.1 of this Interim Financing Order), (vi) to assert that the value of the

Pre-Petition Collateral is less than the Pre-Petition Obligations or (vii) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Interim Financing Order and the Credit Documents or Lender's exercise of such rights or remedies; provided, however, that Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender. For the avoidance of doubt, any trustee appointed or elected in these Cases shall, until the expiration of the period provided herein for asserting challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this section (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.

    4.3    Section 506(c) Claims. Upon entry of a Permanent Financing Order providing for such relief, no costs or expenses of administration which have or may be incurred in the Case shall be charged against Lender, their respective claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

    4.4    Collateral Rights. Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

    4.4.1    absent a further order from this Court, no other party shall foreclose or otherwise enforce any junior lien or claim in any Collateral; and

4.4.2   upon and after the occurrence of an Event of Default, and subject to Lender obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, subject to applicable non-bankruptcy law and, at the sole cost and expense of Debtors, to (collectively, the "**Access Rights**"): (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses; provided, that, for purposes of this Interim Financing Order, the Lender's exercise of its Access Rights shall be limited to (i) access and use permitted in accordance with applicable state law, (ii) the consent of the applicable landlord, lessor or owner, or (iii) a further order of this Court (which may be obtained on shortened notice) authorizing such access and use, including, without limitation, establishing GOB Sale guidelines.  Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Lender actually occupies or uses such assets or properties).

4.5   Release.  Upon the entry of a Permanent Financing Order providing for such relief, and subject to Section 4.1 above, in consideration of Lender making post-petition loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Credit Documents and this Interim Financing Order, Debtors, on behalf of themselves and their successors, assigns and other legal representatives,

31

(collectively, the "**Releasors**"), absolutely, unconditionally and irrevocably release, remise and forever discharge Lender and its respective successors and assigns, and each of its present and former participants, agents, officers, directors, shareholders, affiliates, subsidiaries, divisions, employees, attorneys, professionals and other representatives (collectively, the "**Releasees**") of and from any and all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever, of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Releasors may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the day and date of the Ratification including, without limitation, for or on account of, or in relation to, or in any way in connection with the Credit Agreement, or actions or inactions of Lender in Lender's capacity as equity owner of the Debtors, provided that such release does not apply in cases of fraud, gross negligence or willful misconduct of any Releasee. In addition, upon the indefeasible repayment of all Obligations owed to Lender by Debtors and termination of the rights and obligations arising under the Credit Documents and either a Permanent Financing Order or Interim Financing Order, as the case may be (which payment and termination shall be on terms and conditions acceptable to Lender), Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Credit Documents or the applicable Financing Order (including, without limitation, any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary,

liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses), on terms and conditions acceptable to Lender.

Section 5.      Other Rights and Obligations.

   5.1 No Modification or Stay of This Interim Financing Order. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Financing Order, the Credit Documents or any term hereunder or thereunder, (ii) the failure to obtain a Permanent Financing Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of one or more of the Cases (each, a "**Subject Event**"), (a) the acts taken by Lender in accordance with this Interim Financing Order, and (b) the Post-Petition Obligations incurred or arising prior to Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Financing Order, and the acts taken by Lender in accordance with this Interim Financing Order, and the liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Interim Financing Order and the Credit Documents shall remain valid and in full force and effect. The foregoing shall not be construed to expand the rights and protections of section 364(e) of the Bankruptcy Code. Lender is hereby granted all of the rights and protections of section 364(e) with regard to, *inter alia*, the Post-Petition Obligations, the post-petition liens granted in the Collateral, and the priorities granted to such liens and claims pursuant to this Interim Financing Order.

   5.2 Power to Waive Rights and Duties to Third Parties. Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Financing Order in respect of Lender (the "**Lender Rights**"), and shall have no obligation or

33

duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Lender of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Lender.

        5.3    <u>Disposition of Collateral</u>.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior express written consent of Lender (and such consent shall not be implied in any way from any action, inaction or acquiescence by Lender) and an order of this Court, except for sales of Debtors' Inventory in the ordinary course of business and as otherwise expressly permitted in the Ratification Agreement; provided, however, that the Lender may consent to the filing of a motion to approve replacement debtor-in-possession financing which comports with the provisions of Section 5.7 of this Interim Financing Order and indefeasibly pays in full the Obligations in accordance with the terms of the Credit Documents and this Interim Financing Order.  Debtors shall remit to Lender, or cause to be remitted to Lender, all proceeds of the Collateral for application by Lender to the Obligations, in such order and manner as Lender may determine in its discretion, in accordance with the terms of this Interim Financing Order, the Credit Agreement and the other Credit Documents.

        5.4    <u>Inventory</u>.  Debtors shall not, without the prior express written consent of Lender, (a) enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition

34

indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

   5.5 <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Financing Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Credit Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Debtors' estates.

   5.6 <u>Binding Effect</u>.

   5.6.1 The provisions of this Interim Financing Order and the Credit Documents, the Post-Petition Obligations, Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Lender provided or acknowledged in this Interim Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Financing Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and to the extent permitted by applicable law, shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Case to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

   5.6.2 Notwithstanding any subsequent dismissal of these Cases: (a) the Lender's liens on and security interests in the Collateral shall continue in full force and effect

35

notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the liens in the Collateral.

5.6.3    In the event this Court modifies any of the provisions of this Interim Financing Order or the Credit Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of Lender pursuant to this Interim Financing Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Interim Financing Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.6.4    This Interim Financing Order shall be binding upon Debtors, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case(s) of Debtors.  This Interim Financing Order shall also inure to the benefit of Lender, Debtors and their respective successors and assigns.

5.7    Restrictions on Cash Collateral Use, Additional Financing, and Plan Treatment.  All post-petition advances and other financial accommodations under the Credit Agreement and the other Credit Documents are made in reliance on this Interim Financing Order.  It shall be an immediate event of default under Section 3.1 of this Interim Financing Order if, at any time in the Case or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, the Court enters an order (other than the Permanent Financing Order) which (a) authorizes the use of cash collateral of Debtors in which or Lenders have an interest, or the sale, lease, or other disposition of property of Debtors' estates in which Lender has a lien or security interest, except as expressly permitted hereunder or in the Credit Documents, or (b)

36

authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender herein; unless, in each instance (i) Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (ii) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Credit Documents, including, without limitation, all debts and obligations of Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender.  The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Interim Financing Order and the Credit Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and, if Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

     5.8    No Owner/Operator Liability.  Upon the entry of a Permanent Financing Order providing for such relief, in determining to make any loan under the Credit Agreement, the other Credit Documents or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the Credit Documents or any Financing Order, Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such

37

terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

       5.9    Marshalling.  Upon the entry of a Permanent Financing Order providing for such relief, in no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

       5.10    Term and Termination.  Notwithstanding any provision of this Interim Financing Order to the contrary, the term of the financing arrangements among Debtors and Lender authorized by this Interim Financing Order may be terminated pursuant to the terms of the Credit Agreement.

       5.11    Limited Effect.  Unless the Interim Financing Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Credit Documents and this Interim Financing Order, the terms and provisions of this Interim Financing Order shall govern, interpreted as most consistent with the terms and provisions of the Credit Documents.

       5.12    Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Interim Financing Order according to its terms.

       5.13    Objections Overruled.   All objections to the entry of this Interim Financing Order are, to the extent not withdrawn, hereby overruled.

Section 6.    Final Hearing and Response Dates.

       6.1    Final Hearing.  The Final Hearing to consider entry of the Permanent Financing Order and final approval of the Motion is scheduled for November _26_ , 2013 at _7_ : _00_ _p_.m. (ET) before the Honorable Brendan L. Shannon, United States Bankruptcy

Judge, Courtroom 1, at the United States Bankruptcy Court for the District of Delaware located at 824 North Market Street, Wilmington, Delaware 19801.

6.2     Notice of Final Hearing.  The Debtors shall serve, by United States mail, first-class postage prepaid, a copy of the Motion and Interim Financing Order upon: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors; (vi) counsel to any Committee; (vii) counsel to the Lender; and (viii) any party which has filed prior to such date a request for notices under Bankruptcy Rule 2002 with this Court.

6.3     Objection Deadline.  Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and personally served upon (a) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton and Robert S. Brady) counsel to the Debtors; (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight, Michael J. Merchant and William A. Romanowicz), counsel to the Lender; (c) the U.S. Trustee; and (d) counsel to any Committee,  so that such objections are filed with the Court and actually received by said parties on or before 4:00 p.m. (ET) on November 18, 2013 with respect to entry of the Permanent Financing Order.

Dated: October 31, 2013
        Wilmington, Delaware

_____
BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE