## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| *In re* | : | **Chapter 11** |
|  | : |  |
| **GOLDKING HOLDINGS, LLC**, *et al*., | : | **Case No. 13-12820 (BLS)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |
|  | : | **Hearing Date: TBD** |
|  | : | **Objection Deadline: TBD** |

------------------------------------------------------------ x

### MOTION OF LEONARD C. TALLERINE, JR AND GOLDKING LT CAPITAL CORP. TO TRANSFER VENUE OF THESE CASES

Leonard C. Tallerine, Jr., ("Mr. Tallerine") and Goldking LT Capital Corp. ("Goldking Capital" together with Mr. Tallerine, the "Movants"), creditors, equity interest holders and parties-in-interest in the above-captioned cases of Goldking Holdings, LLC ("Goldking Holdings"), Goldking Onshore Operating, LLC ("Goldking Onshore"), and Goldking Resources, LLC ("Goldking Resources," and collectively with Goldking Holdings and Goldking Onshore, the "Debtors"), through their undersigned counsel, respectfully move this Court (the "Motion to Transfer"), pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),  for entry of an order, substantially in the form attached hereto as **Exhibit A**, transferring venue of these cases to either the United States Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court") or the United States Bankruptcy Court for the Western District of Louisiana (the "Louisiana Bankruptcy Court" collectively with the Texas Bankruptcy Court, the "Proposed Bankruptcy Courts"), as this Court deems appropriate.  In support of the Motion to Transfer, the Movants

---

[1]     The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Goldking Holdings, LLC (2614); Goldking Onshore Operating, LLC (2653); and Goldking Resources, LLC (2682).  The mailing address for the Debtors is 777 Walker Street, Suite 2500, Houston, TX 77002.

1

incorporate by reference the Declaration of Ann C. Cordo (the "Cordo Decl.") and the exhibits thereto, and respectfully state as follows:

## PRELIMINARY STATEMENT

There are those bankruptcy cases in which, despite the fact that a debtor corporation maintains its headquarters elsewhere, its choice to file a voluntary chapter 11 case in its state of incorporation can be justified based the national scope of the debtor's business operations and assets, the distribution of its creditor body or other legitimate reasons. And, then there are the instant cases.

These Debtors have only one connection with the State of Delaware – each privately held limited liability company was formed under Delaware law. Without exception, every other factor that Courts consider in evaluating whether to transfer venue of a bankruptcy case points due southwest to Texas or Louisiana. Such factors, include, but are not limited to, the following:

- As the Debtors admit, each of the Debtors is headquartered in Houston, Texas. Herbert Decl., ¶ 12.

- Two of the three members of Goldking Holdings' Board of Managers are located in Houston, Texas – Goldking Holdings' CEO Edward Herbert and Wayzata (defined herein) executive Michael V. Strain.[2]

- As the Debtors admit, each of the Debtors "was organized for the purpose of acquiring and developing oil and gas properties on shore and in state waters in South Louisiana and the upper Texas Gulf Coast." Herbert Decl., ¶ 9.

- As the Debtors admit, as of the Petition Date (defined herein), the Debtors' entire 9,000 net acres of oil and gas leasehold interests were located in Texas and Louisiana. Herbert Decl., ¶ 10

- As the Debtors admit, the Debtors' entire current operations consist of 12 wells located in Iberville, Terrebonne and Vermilion Parishes, Louisiana and

---

[2]  The third member of the Board of Managers is a Wayzata Investment Partners Partner, Blake M. Carlson, who is based in it principal office located in Wayzata, Minnesota.

35 wells located in Aransas, Hardin and Jasper Counties, Texas. Herbert Decl., ¶ 10.

- 27 out of their 30 largest unsecured creditors as of the Petition Date were located in Texas or Louisiana. Docket No. 1. p. 5-9.

- In excess of 79% of the 2,303 creditors on the Debtors' creditors matrix [Docket No. 12] have Texas or Louisiana addresses.

- Only one of the 2,303 creditors on the Debtors' creditors matrix is located in Delaware – The Delaware Secretary of State.

- The Existing Credit Agreement (defined herein), under which Wayzata, by assignment from Bank of America, N.A.. is the sole agent and lender, is governed by Texas law and makes the Debtors subject to jurisdiction of the state and federal courts of Texas.

- According to the LLC Agreement (defined herein) of Goldking Holdings, disputes among Wayzata and Goldking Capital, as the sole members of Goldking Holdings, were to have been submitted to an arbitration proceeding to take place in Houston, Texas.

- As the Debtors admit, they have just 8 full-time and 3 part-time employees, all of which are located in Texas and Louisiana.

- Although the Debtors and Wayzata each hired Delaware-based law firms for purposes of these bankruptcy cases, the Debtors and Wayzata are each represented or have the ability to be represented by law firms located in Texas.

- As Debtors admit, the Debtors have engaged Lantana Oil & Gas Partners, a divestment advisory firm which its sole office in Houston, Texas, to assist with marketing the Debtors' assets. Herbert Decl., ¶ 31.

- As Debtors admit, three out of their proposed four Ordinary Course Professionals are located in Houston, Texas, and the fourth while being listed at an address in Cleveland, Ohio, has an office in Houston, Texas with over 80 lawyers.

- As Debtors admit, within the last nine months, Debtors selected the District Court of Harris County, Texas as their chosen venue to file the Texas Complaint (as defined herein) against Mr. Tallerine, Goldking Capital and other parties, which the Debtors purport to describe in paragraphs 23 through 26 of the Herbert Declaration and attach as Exhibit A thereto .

- According to the Texas Complaint, all of the defendants reside or have their principal place of business in Texas (except for one defendant, which is alleged to have its principal place of business in Louisiana and to do business in Texas).

- According to the Texas Complaint, Harris County, Texas is where all or a substantial part of the events allegedly giving rise to the claims in the complaint occurred.

Furthermore, if, as the Debtors insist, the purpose of these cases is to market and sell the Debtors' oil and gas assets, no reason exists that prevents these bankruptcy cases from proceeding in Texas or Louisiana without equal or greater success than could be achieved here. As the Debtors admit, they commenced their marketing process on October 17, 2013, only two weeks before filing these bankruptcy cases. And, under the terms of the Ratification Agreement (defined herein), the marketing and sale process they contemplate may continue for up to 150 days following the Petition Date before a liquidation or going concern sale must be consummated. Transferring the cases now, while they are in their infancy, would do no violence to these efforts.

Accordingly, as described herein, the facts of these cases demonstrate conclusively that the convenience of the parties and the interest of justice strongly support transferring the Debtors' cases to the one of the Proposed Bankruptcy Courts.

## **FACTUAL BACKGROUND**

### *Mr. Tallerine And Goldking Capital*

1.    Mr. Tallerine is a successful oil and gas businessman with more than thirty years' experience in the Gulf Coast region. Mr. Tallerine resides in Houston, Texas and conducts business primarily in Texas and Louisiana. Mr. Tallerine owns the "Goldking" name, and for decades has done business using the "Goldking" name through more than a dozen different entities.

2.      Goldking Capital is a corporation owned by Mr. Tallerine, with its principal place of business in Houston, Texas.  Mr. Tallerine holds his investment in Goldking Holdings through this entity.

*Debtors' Chapter 11 Cases*

3.      On October 30, 2013 (the "Petition Date"), the Debtors filed petitions (the "Petitions") for bankruptcy under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").

4.      Each Debtor attached to its Petition, among other things, its respective corporate resolutions regarding the bankruptcy filing, the Consolidated List of Creditors Holding 30 Largest Unsecured Claims (the "Top 30 List"), a List of Equity Security Holders, and a Statement of Corporate Ownership. *See* Cordo Decl., Ex. A (Chapter 11 Voluntary Petition, *Goldking Holdings, LLC*, Case No. 13-12820 (BLS) (Bankr. D. Del. October 30, 2013)); Cordo Declaration, Ex. B (Chapter 11 Voluntary Petition, *Goldking Onshore Operating, LLC*, Case No. 13-12818 (BLS) (Bankr. D. Del. October 30, 2013)); Cordo Decl., Ex. C (Chapter 11 Voluntary Petition, *Goldking Resources, LLC*, Case No. 13-12819 (BLS) (Bankr. D. Del. October 30, 2013)).

5.      Other filings Debtors made on or near the Petition Date included: (a) their Consolidated List of Creditors (the "Creditor List") [D.I. 12] (Cordo Decl., Ex. D); (b) a motion [D.I. 8] seeking to pay the pre-petition claims of certain creditors that the Debtors deem to be critical to their ongoing business operations; (c) a motion [D.I. 11] (the "DIP Financing Motion") seeking authority for the Debtors to obtain a senior secured, super-priority debtor-in-possession financing facility and related relief; and. and the declaration [D.I. 2] of the Debtors' CEO,

Edward Herbert, in support of their chapter 11 petitions and first day relief (the "<u>Herbert Declaration</u>" or "<u>Herbert Decl.</u>") (Cordo Decl., Ex. E).

*<u>The Debtors, the Debtors' Business, and the Debtors' Assets are Located in Texas and Louisiana</u>*

6.       The Debtors were formed on or about March 3, 2010. Goldking Holdings is the parent holding company, which owns the operating companies Goldking Onshore and Goldking Resources.   Governance of Goldking Holdings is pursuant to the Amended and Restated Limited Liability Company Agreement, dated as of August 31, 2010 (the "<u>LLC Agreement</u>"). Cordo Decl., Ex. F.   The members of Goldking Holdings are Wayzata, as the majority member, and Goldking Capital, as the minority member.   The parties do not agree on the percentage level of Goldking Capital's membership interest, but the disputed range is roughly 5.80% to 6.25%.

7.       Certain terms of the LLC Agreement clearly establish that it was the intent of Mr. Tallerine and Goldking Capital and Wayzata that this entity should be closely tied to Texas, despite the fact that the LLC Agreement itself is governed by Delaware law.   Section 1.4(b) of the LLC Agreement provides that "[t]he Company's principal place of business shall be located in or around Houston, Texas, or such other location as designated by the Board." Further, Section 12.7(c) of the LLC Agreement dictates that certain disputes among members are to proceed via arbitration and such proceedings are to be held in Houston, Texas.

8.       As the Debtors admit, each Debtor is headquartered in Houston, Texas. Herbert Decl., ¶ 12.   Indeed, each Debtor's bankruptcy petition identifies its street address as "777 Walker Street, Suite 2500, Houston, TX" and the county of its principal place of business as Harris County, Texas.   Cordo Decl., Ex. A (Petition of Goldking Holdings), Ex. B (Petition of Goldking Onshore), and Ex. C (Petition of Goldking Resources).

9.      Additionally, Debtor Goldking Holdings, the parent entity of Debtors Goldking Onshore and Goldking Resources, is currently governed by three member board, consisting of Edward Hebert, its CEO since May 2013, and two Wayzata executives, Michael V. Strain and Blake M. Carlson.   According to the most recent Texas Franchise Tax Public Information Report, dated July 25, 2013, two of these Board members list their addresses in Houston, Texas. Cordo Decl., Ex. G.  Mr. Herbert's address is identified as 777 Walker St., Ste. 2500, Houston, Texas (the same address as listed for each of the Debtors).  Mr. Strain's address is identified as 1330 Post Oak Blvd., Ste. 2160, Houston, Texas, the same address as Wayzata's Houston, Texas office.  Cordo Decl., Ex. G.

10.      As the Debtors admit, each of the Debtors "was organized for the purpose of acquiring and developing oil and gas properties on shore and in state waters in South Louisiana and the upper Texas Gulf Coast."[3] Herbert Decl., ¶ 9.  The Debtors operate 47 wells, 12 of which are located in Louisiana and 35 of which are located in Texas.  Herbert Decl., ¶ 10. Nowhere in the Herbert Declaration or elsewhere in the record of these cases do the Debtors mention doing business, owning, or leasing property in places other than Texas or Louisiana.

*The Debtors' Creditors are Almost Exclusively Located in Texas and Louisiana*

11.      The Debtors' disclosures in the Petitions and the Herbert Declaration demonstrate, with just one exception, a lack of Delaware-based creditors **and** an overwhelming presence of Texas and Louisiana-based creditors.  According to the Debtors' verified Top 30 Lists annexed to their respective bankruptcy petitions, Cordo Decl. Ex. A-C, 27 out of 30 of the unsecured creditors on the Top 30 List are located in Texas or Louisiana.  Of the unsecured

---

[3]      Movants respectfully submit that this Court can and should take judicial notice of the fact that the upper Texas Gulf Coast and Southern Louisiana regions are contiguous areas along the coastal regions of Texas and Louisiana that abut one another.

creditors on the Top 30 List, **21** are located in Texas and **6** are located in Louisiana.  The Texas creditors listed on the Top 30 List hold **nearly 54%** of the total unsecured debt listed on the Top 30 List and the Louisiana creditors hold **nearly 29%** of the unsecured debt listed on the Top 30 List for a combined **nearly 83%** of the unsecured debt listed on the Top 30 List.[4]  The Top 30 List also discloses that **none** of the thirty largest creditors are located in Delaware.[5]

12.     Along with the Petitions, the Debtors filed the Creditor List.  The Creditor List discloses that the Debtors have 2303 total creditors, of which only 475 are not located in Texas or Louisiana.  Accordingly, **more than 79% of all of the Debtors' creditors** are located in Texas or Louisiana.  The Creditor List also discloses one creditor located in Delaware – the Delaware Secretary of State.[6]

*The Existing Credit Agreement And The Ratification Agreement Are Governed By Texas Law And Specify Texas Court Jurisdiction And Venue For Proceedings Thereunder*

13.     Attached as Exhibit A to the DIP Financing Motion is that certain Credit Agreement by and between Goldking Resources, LLC, as borrower, Goldking Holding, LLC and Goldking Onshore Operating, LLC, as guarantors, and Bank of America, N.A., as administrative agent and lender (the "Existing Credit Agreement").  *See* Cordo Decl., Ex. H. As set forth in the

---

[4]     According to the Debtors, the creditors listed on the Top 30 List collectively hold $1,660,119.01 in unsecured debt, of which the 21 Texas unsecured creditors hold $896,454.21 and the 6 Louisiana creditors hold $489,153.04.

[5]     The three unsecured creditors on the Top 30 List for which neither Texas nor Louisiana addresses are  the following: (a) one trade creditor holding a claim of $15,737.24, listed at an address in Atlanta, Georgia; (b) the 800 plus lawyer law firm Baker Hostetler LLP (for which the Debtors list a Cleveland, Ohio address, but which has a Houston, Texas office with over 80 lawyers); and (c) Alvarez & Marsal, a global professional services firm of  (for which the Debtors list a New York, New York address, but which maintains offices    in    Houston,    Dallas,    and    San    Antonio,    Texas).    *See* http://www.bakerlaw.com/lawyers/list.aspx?Offices=7ab8a3b8-2aa7-4784-ad00-7f2e0d4ab732 (last accessed on Nov. 7, 2013); http://www.alvarezandmarsal.com/all-locations?cou=336 (last accessed on Nov. 7, 2013).

[6]     The address listed for the Delaware Secretary of State is P.O. Box 5509, Binghamton, NY 13902-5509.  On information and belief, this is the address commonly listed in bankruptcy cases for noticing purposes relating to Delaware entity franchise taxes.

8

DIP Financing Motion and the Herbert Declaration, effective January 24, 2013, Wayzata, acquired by assignment all of Bank of America, N.A.'s rights and oblations under the Existing Credit Agreement.  The Debtors allege that aggregate outstanding principal amount of obligations under the Existing Credit Agreement as of the Petition Date was approximately $11.446 million. Herbert Decl., ¶ 17.  Debtors allege further that all obligations under the Existing Credit Agreement are secured by substantially all of their assets. Herbert Decl., ¶ 13.

14.    Not coincidentally, Wayzata's acquisition by assignment of the bank debt under the Existing Credit Agreement followed just over a month after the Wayzata controlled Board purported to terminate Mr. Tallerine's employment as Chief Executive Officer of Goldking Holdings, remove him from the Board of Managers for Goldking Holdings, and to, among other things, bar him from the Debtors' premises.

15.    Made effective January 24, 2013 – the same date Wayzata acquired all of the bank debt under the Existing Credit Agreement – the Debtors, now entirely controlled by Wayzata, were then caused to execute Amendments Nos. 3 and 4 to the Existing Credit Agreement.[7] *See* Cordo Decl., Exs. I & J.  Especially Amendment No. 3 was entirely one-sided to the benefit of Wayzata as the Debtors' newly minted secured lender.  For example, the "Applicable Margin" (the largest component of interest charged under the Existing Credit Agreement) was increased to a fixed rate of 15% per year.  Under the Existing Credit Agreement, the Applicable Margin could be as low as 4.50% and could never exceed 6.00%.  Thus, pursuant to Section 2.8 of the Existing Credit Agreement, the non-default interest rate on

---

[7]    It is unclear when Amendment Nos. 3 and 4 to the Existing Credit Agreement were actually signed by the representative of the Debtors and Wayzata.  The signature pages of both amendments are undated.

Base Rate and Eurodollar Rate Advances, after giving effect to Amendment No. 3, could be at least several percentage points higher than the newly jacked-up Applicable Margin.[8]

16.    Similarly, section 5.11 of the Existing Credit Agreement was amended to increase the percentage of the value of the oil and gas properties and related equipment of the guarantor Debtors that was encumbered by mortgages and liens in favor of Wayzata, as the sole agent and lender, from 85% to "substantially all" of their value.

17.    Attached as Exhibit B to the DIP Financing Motion is that certain Ratification, Amendment, and Security Agreement dated October 31, 2013 (the "Ratification Agreement," and together with the Existing Credit Agreement, the "Credit Documents") (Cordo Decl., Ex. K), which modifies the Existing Credit Agreement to include the terms of the post-petition debtor-in-possession financing facility in connection with these chapter 11 cases (the "DIP Facility").  Significantly, the Ratification Agreement does not provide that having these cases transferred outside of the Delaware Bankruptcy Court would constitute an event of default. Further, the Ratification Agreement leaves Texas law as the governing law except to the extent preempted by the Bankruptcy Code. Ratification Agreement § 9.5.

*Litigation Initiated By The Wayzata-Controlled Debtors in Texas*

18.    On February 13, 2013, the Wayzata-controlled Debtors commenced the action styled *Goldking Onshore Operating LLC v. Leonard Tallerine, Jr., et. al.*, Case No. 2013-

---

[8]    For example, per Section 2.8(a), the non-default interest rate on Base Rate Advances would be "the Adjusted Base Rate in effect from time to time plus the Applicable Margin plus 2.00% per annum.  As defined in the Existing Credit Agreement, the Adjusted Base Rate would be not less than Bank of America's prime rate (which has been set at 3.25% for the last several years), plus 15.00%, plus 2.00%, for a total of 20.25%.  It appears that Amendment No. 4 may have been an after the fact attempt to prevent the interest rate established by Amendment No. 3 from being deemed usurious.  It revised the definition of "Applicable Margin" to mean "for any Type of Advance, such a margin that results in the effective rate of interest being a fixed rate of 15% per annum."  Accordingly, Amendment No. 4 appears to have established a fixed 15% per year non-default interest rate.

08724 (the "Texas Action"), in the Texas District Court by filing (the "Texas Complaint")
against Mr. Tallerine and various other defendants. Herbert Decl., Ex. B.  The Texas Complaint
makes allegations against Mr. Tallerine and other defendants, which Mr. Tallerine strenuously
disputes, that they engaged in misconduct in connection with the Debtors.[9]

19.     Importantly for purposes of this Motion to Transfer, however, according to
the Texas Complaint, all of the defendants in the Texas Action reside or have their principal
place of business in Texas (except for one defendant, which is alleged to have its principal place
of business in Louisiana and to do business in Texas. Texas Complaint, ¶¶ 8 – 15.  Further,
Debtors allege in the Texas Complaint that Harris County, Texas, is where all or a substantial
part of the events allegedly giving rise to the claims in the complaint occurred. Texas Complaint,
¶ 18.

*The Debtors' and Wayzata Are Represented Or Easily Have The Ability To Be Represented By*
*Quality Professionals In Texas*

20.     Although the Debtors and Wayzata have each hired Delaware based law
firms to represent then in connection with the bankruptcy cases, each would have little difficult
obtaining competent counsel of their choice in Texas or Louisiana.[10]  Debtors are already

---

[9]     On September 13, 2013, Mr. Tallerine, Goldking Capital and other counterclaim-plaintiffs filed their First Amended Answer and Counterclaim against the Debtors, Wayzata, Mr. Herbert, Mr. Carlson, Mr. Strain and others. In addition to disputing many of the material allegations of the Texas Complaint, the counterclaim-plaintiffs asserted various claims for fraud, conversion, theft of services, invasion of privacy, trespass and breach of contract, among others.

[10]    Movants reserve the right to explore the circumstances under which the Delaware law firms were retained to represent the Debtors and Wayzata.  On November 7, 2013, the Debtors filed the *Debtors' Application for an Order, Pursuant to Section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, Authorizing the Retention of Young Conaway Stargatt & Taylor, LLP as Attorneys for the Debtors, Nunc Pro Tunc to the Petition Date* [D.I. 42] (the "YCST Retention Motion").  Paragraph 8 of the YCST Retention Motion provides that YCST was retained on October 11, 2013, less than three weeks before the filing of the bankruptcy cases. If this is in fact the case, then little or no weight should be afforded to the fact that the Debtors hired only counsel in Delaware.  Similarly, while it has not been disclosed when Wayzata retained their

represented in the Texas Action by the Houston-based law firm Gibbs & Bruns, LLP.[11]
Wayzata, in turn, negotiated the right in the LLC Agreement to continue to be represented by the
large Texas-based law firm Thompson & Knight LLP.  *See* LLP Agreement, § 12.17.  Mr.
Tallerine and Goldking Capital also have access to attorneys whether these cases land in Texas
or Louisiana.

21.    On November 7, 2013, the Debtors filed the *Debtors' Motion for an
Order, Pursuant to Sections 105(a), 327, 328, and 300 of the Bankruptcy Code, Authorizing the
Debtors to Retain and Compensate Certain Professions Utilized in the Ordinary Course of
Business, Nunc Pro Tunc to the Petition Date* [D.I. 45] (the "OCP Motion").  Attached as Exhibit
A to the OCP Motion is a list of four (4) proposed professionals.  Of the four professionals listed,
three are located in Houston, Texas, and the fourth is a law firm listed as being located in
Cleveland, Ohio, however, the firm has an office in Houston, Texas with over 80 lawyers.

22.    Additionally, the Debtors' have retained Lantana Oil & Gas Partners
("Lantana") to serve as financial advisor and investment banker to oversee the marking and sale
of the Debtors' assets.  Lantana has a single office located in Houston, Texas.  Cordo
Declaration, Ex. L (Lantana Oil & Gas Partners, Directions, *http://lantanaog.com/directions/*
(last visited on November 7, 2013)).

---

Delaware counsel for this matter, if it was under similar timing as the Debtors' retention
of YCST, then it should also be afforded little or no weight.

[11]    Mr. Tallerine and Goldking Capital are also currently represented in the Texas Action by
Houston-based counsel, the Fryar Law Firm.  Further, Movants' co-counsel Lugenbuhl,
Wheaton, Peck, Rankin & Hubbard, maintains offices in Houston, Texas, and Baton
Rouge and New Orleans, Louisiana

## RELIEF REQUESTED

23.     The Movants respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) transferring venue of these cases to the either the Texas Bankruptcy Court or the Louisiana Bankruptcy Court and (ii) granting the Movants such other and further relief as is just and proper.

## BASIS FOR RELIEF REQUESTED

24.     Pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1), the Court may grant relief requested in the Motion to Transfer if it is established that a transfer of venue is in (a) the interest of justice **or** (b) the convenience of the parties.  *See In re Qualteq, Inc.*, 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012); *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002); *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 435 (Bankr. N.D. Ala. 2000) ("Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferable upon a sufficient showing of **either** the interest of justice **or** the convenience of the parties.") (emphasis added).  As set forth below, the undisputed facts set forth in the Debtors' filings before this Court show that the transfer of these cases to either of the Proposed Bankruptcy Cases is both in the interest of justice and the convenience of the parties and should be granted by this Court.

**The Convenience of the Parties Strongly Weighs in Favor of Transferring the Debtors' Cases to Either of the Proposed Bankruptcy Courts**

25.     In considering the convenience of the parties, courts in this district and elsewhere evaluate six factors adopted by the court in *Commonwealth Oil Refining Co., Inc.  See Matter of Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1242 (5th Cir. 1979) (better known and hereinafter referred to as "CORCO"); *In re Qualteq, Inc.*, 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012) (applying six *CORCO* factors); *In re Innovative Commc'n Co.*, 358 B.R. 120, 126

(Bankr. D. Del. 2006); *In re Enron Corp.*, 274 B.R. at 343 (Bankr. S.D.N.Y. 2002); *In re Garden Manor Assocs.*, LP, 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988); 1 COLLIER ON BANKRUPTCY ¶ 4.03[3][a] (16th ed. rev. 2013); 9 COLLIER ON BANKRUPTCY ¶ 1014.02[2][a] (16th ed. rev. 2013).

26.     The six *CORCO* factors are as follows:

    a.   proximity of creditors of every kind to the court;

    b.   proximity of the debtor;

    c.   proximity of witnesses who are necessary to the administration of the estate;

    d.   the location of the debtor's assets;

    e.   the economic administration of the estate; and

    f.   the necessity for ancillary administration in the event of liquidation.

*CORCO*, 596 F.2d at 1247.

27.     Each of the six *CORCO* factors weigh heavily in favor of transferring the Debtors' cases to the either of the Proposed Bankruptcy Courts.

    a.   *Proximity of Creditors to the Proposed Bankruptcy Courts And Their Remoteness From The Delaware Court Strongly Supports Venue in Texas or Louisiana*

28.     The Debtors' creditors are overwhelmingly located in Texas and Louisiana.  According to the Petitions, the Top 30 List includes the largest unsecured creditors of Goldking Holdings, LLC, Goldking Onshore Operating, LLC, and Goldking Resources, LLC.  *See* Cordo Declaration Ex. A-C. Of the unsecured creditors on the Top 30 List, **27** are located in either Texas or Louisiana.  The Texas and Louisiana creditors listed on the Top 30 List hold **nearly 83%** of the total unsecured debt listed on the Top 30 List.  The Top 30 List also discloses that **none** of the thirty largest creditors are located in Delaware.  The Debtors' landlord is also located in Texas and all of the Debtors owned or leased property is in Texas or Louisiana.

29.      Furthermore, the Creditor List discloses that the Debtors have 2303 total creditors, of which only 475 are not located in Texas or Louisiana.  Accordingly, **more than 79% of all of the Debtors' creditors** are located in Texas or Louisiana.  The Creditor List also discloses that just one of the Debtors' creditors is located in Delaware – the Delaware Secretary of State.

30.      The Debtors' employees and former employees represent a group of interested parties, and either of the Proposed Bankruptcy Courts is likely to be significantly more convenient for each of them than Delaware.  As the Debtors' employees work out of the Debtors' Houston headquarters, or at its property in Texas or Louisiana, having venue in Texas or Louisiana is significantly more convenient than Delaware.[12]  Accordingly, transferring the Debtors' cases to the either of the Proposed Bankruptcy Courts will undoubtedly make it easier for the Debtors' employees to follow the progress of the Debtors' cases.

31.      Additionally, transferring venue, certain to Texas is consistent with the expectations of the parties to the Credit Documents.  Texas law governs the Credit Documents by their express terms.  Indeed, but for the bankruptcy filing, the parties would be subject to Texas jurisdiction and venue provisions contained in the Existing Credit Agreement.

---

[12]      *See* Motion to Pay Employee Wages and (A) Authorizing (I) Payment of Prepetition Employee Wages, Salaries and Other Compensation; (II) Reimbursement of Prepetition Employee Business Expenses; (III) Contributions to Prepetition Employee Benefit Programs and Continuation of Such Programs in the Ordinary Course; (IV) Payment of Workers' Compensation Obligations; (V) Payments for Which Prepetition Payroll Deductions Were Made; (VI) Payment of All Costs and Expenses Incident to the Foregoing Payments and Contributions; and (VII) Payment to Third Parties of All Amounts Incident to the Foregoing Payments and Contributions and (B) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers, ¶¶ 8 & 31 [Docket No. 10].

b.     *Proximity of the Debtors and Their Principal Assets to the Proposed Bankruptcy Courts Strongly Supports Transferring Venue Of These Cases*

32.      Transferring these cases to either of the Proposed Bankruptcy Courts is also strongly supported by the location of the Debtors and their principal place of business. The Debtors admit in their bankruptcy petitions and in the Herbert Declaration that their mailing address and principal place of businesses are located in Houston, Texas. Indeed, the LLC Agreement governing the parent Debtor Goldking Holdings presumes that Goldking Holdings' principal place of business shall be Houston, Texas unless the Board of Managers takes contrary action. *See* LLC Agreement, § 1.4(b).

c.     *The Proximity of Witnesses to the Proposed Bankruptcy Courts Strongly Supports Transferring Venue of These Cases*

33.      Transferring the Debtors' cases to either of the Proposed Bankruptcy Courts is also strongly supported by the location of the witnesses that are likely to be necessary in the Debtors' bankruptcy cases and related litigation. Based on the filings filed on the Petition Date, including the Herbert Declaration, the Debtors it appears that Mr. Herbert, the current CEO of Goldking Holdings, will be one o the primary witnesses to, among other things, support their business decisions over the course of their bankruptcy cases. Mr. Herbert is based in Houston, Texas.

34.      Additionally, to the extent the Debtors pursue a sale process and doing so eventually necessitates a testimony from their financial advisor, the firm the Debtors have hired is the Houston, Texas based Lantana Oil & Gas Partners. Lantana Oil & Gas Partners has a single office in Houston, Texas, so it is likely any witnesses to be provided by Lantana Oil & Gas Partners will also be located in Houston.

35.      If the case is transferred to the Texas Bankruptcy Court, as the Debtors headquarters are located in Houston, Texas, it is highly likely that the Debtors' executives live in

and around that area so neither Mr. Herbert nor any witness from Lantana Oil & Gas Partners would have to travel any material distance.  Even if the cases were transferred to the Louisiana Bankruptcy Court, Houston, Texas, and Lafayette, Louisiana are approximately 237 miles apart, while Houston and Wilmington, Delaware are nearly 1,500 miles apart.  In more practical terms, Lafayette is an approximately three (3) hour car ride from Houston and just under an hour flight. The Court can take judicial notice that the same travel times from Houston or Lafayette to Wilmington, Delaware are significantly longer.

36.    Further, to the extent that the Texas Action proceeds, the large majority of the witnesses will be more proximate to a Texas or Louisiana venued bankruptcy court than one in Delaware.  In the Texas Complaint, Debtors alleged all of the Defendants, either resided in or had their principal place of business in Texas or Louisiana. Texas Complaint, ¶¶ 8 - 15.  Even Wayzata's representatives cannot contend that Delaware is a more convenient forum.  Michael V. Strain, A Wayzata appointee on the Board of Managers of Goldking Holdings is located in Houston, Texas according to his biography on Wayzata's website. *See* Cordo Decl., Ex. M. Other potential Wayzata witnesses, to the extent not located in Wayzata's Houston office, are likely located at Wayzata's Minnesota-based headquarters.  Wilmington, Delaware is no more convenient to witnesses located in Wayzata, Minnesota as a venue than either of the Proposed Bankruptcy Courts.[13]

---

[13]    According to Mapquest.com (last accessed on Nov. 6, 2013), by car, the trip from Wayzata, Minnesota to Wilmington, Delaware is 1,172.47 miles, with a total driving time of 19 hours, 12 minutes.  Wayzata, Minnesota to Houston, Texas is 1,186.07 miles by car, with a total driving time of 18 hours, 33 minutes.  According to Expedia.com (last accessed on Nov. 6, 2013), on Monday, December 2, 2013, there are eight non-stop flights available from Minneapolis, Minnesota to Philadelphia, Pennsylvania, which average about 2 hours, 37 minutes in duration.  On the same date, there are eight listed non-stop departures from Minneapolis, Minnesota to Houston, Texas, which average about 3 hours even in duration.

37.     In any event, it is important to consider that Wayzata voluntarily entered into contractual and other relationships with a nexus in Texas and Louisiana.  Wayzata executed the LLC Agreement providing for Goldking Holdings to be headquartered in Houston, Texas. That same agreement also provides for disputes among members to be addressed through arbitration proceedings to occur in Houston, Texas.  Wayzata also voluntarily took assignment of all of the debt holdings under the Credit Documents, which specify Texas law and Texas venue and jurisdiction.  Furthermore, less than nine months ago, after Wayzata had gained exclusive control of the Debtors, it was Wayzata that caused the Debtors to file the Texas Action in the Texas District Court located in Houston, Texas.

        *d.*     *The Proximity of the Debtors' Assets to Texas and Louisiana Strongly Supports Transferring Venue of these Cases*

38.     As set forth in the Herbert Declaration, the Debtors' principal assets are their oil and gas leasehold interests and related equipment, substantially all of which are located in Texas and Louisiana. The Debtors operate a total of 47 wells: 35 in Texas; and 12 in Louisiana.

39.     The nature of the Debtors' assets is also important in considering what weight to be given to the concentration of assets in Texas and Louisiana.  Oil and Gas interests are like traditional real property in that they are rooted to a particular location.  Until the petroleum products are actually severed from the oil and gas interests by removing them from the ground, no interest in property can be separated from the physical location of the oil and gas interests.

40.     Furthermore, given the Debtors' announced intent to sell the business as a going concern or at least their oil and gas interests, it is reasonable to expect that prospective purchasers would want to engage in physical due diligence with respect to the properties,

including on-site testing and inspection of the properties and the facilities located thereon. In view of these necessities to running an effective marketing and sale process, it makes little sense to force potential purchasers to inspect properties located in Texas and Louisiana only to have to travel half-way across the country or more to attend an auction and sale hearing in Wilmington, Delaware.

        *e.*    *The Economic Administration of the Estate    Strongly Favors Transfer of these Cases out of Delaware*

    41.      Courts in this District and others have determined that the fifth *CORCO* factor is the most important. *See Burtch v. Allou Health & Beauty Care, Inc.*, Adv. Pro. No. 00-00445, 2000 WL 33712310 (Bankr. D. Del. Oct. 13, 2000) ("One of the most important factors a court considers when determining venue is whether transfer promotes the economic and efficient administration of the debtor's estate.")  (citing *CORCO*, 596 F.2d at 1247); *In re DHP Holdings II Corp.*, 435 B.R. 264, 275 (Bankr. D. Del. 2010) ("Ultimately, however, 'the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate.'") (quoting *CORCO* at 1247).

    42.      In *CORCO*, the Fifth Circuit addressed this factor of the analysis as follows:

> On the efficiency side, San Antonio is clearly the favored district. The heart of a Chapter XI proceeding is working up a financial plan of arrangement acceptable to all relevant parties. The people charged with this responsibility in CORCO's management are all located in San Antonio. The bankruptcy court also found that the debtor's estate could be administered more economically in San Antonio. We cannot conclude that the bankruptcy court's finding [that venue was proper in San Antonio] was clearly erroneous.

*See CORCO*, 596 F.2d at 1247.

    43.      In the present cases, the Debtors' management is located in Houston, Texas, making either of the Proposed Bankruptcy Courts more efficient than the Delaware

Bankruptcy Court.  Additionally, the Debtors' financial advisor and investment banker, who will play a key role in the Debtors' sale process, are located in Houston, Texas.  While the Debtors currently have only Delaware Bankruptcy counsel listed on their papers, given their ties to both Texas and Louisiana, it is likely the Debtors either have, or will be able to quickly secure competent counsel in either jurisdiction.

44.    While the Delaware Bankruptcy Court is one of the most experienced courts in the nation in terms of corporate chapter 11 cases, the Texas Bankruptcy Court has presided over numerous large chapter 11 cases, and has significant experience with oil and gas cases such as these and there is no reason why the Texas Bankruptcy Court could not manage these cases as well as this Court.  *See, e.g., In re ATP Oil & Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex. 2012) (chapter 11 debtor involved in the acquisition, development and production of oil and natural gas properties with assets and liabilities over $1 billion); *In re Seahawk Drilling, Inc.*, Case No. 11-20089 (Bankr. S.D. Tex. 2011) (chapter 11 debtor that provided drilling services to the oil and natural gas exploration and production industry with assets of $500 million); *In re Edge Petroleum Corp*., Case No. 09-20644 (Bankr. S.D. Tex. 2009) (chapter 11 debtor involved in the exploration, development, acquisition and production of oil and gas with assets over $250 million). Similarly, the Louisiana Bankruptcy Court has also presided over large oil and gas related chapter11 cases and there is no reason why the Louisiana Bankruptcy Court would not be able to manage these cases.  See, e.g., *In re Harvest Oil and Gas, LLC, et. al.* Case No. 09-50397 (Bankr. W.D. L.A. 2009) (oil and natural gas exploration companies involving over $100 - $500 million in assets and liabilities and wells in Louisiana and Texas).

45.        Further, while all three courts have experience with large and complex cases, the Debtors' chapter 11 cases are neither particularly large nor particularly complex.  As disclosed in the Petitions, Goldking Holdings, LLC has between $50-$100 million in assets and between $1-$10 million in liabilities, Goldking Resources, LLC has between $500 thousand - $1 million in assets and between $10-$50 million in liabilities, and Goldking Onshore Operating, LLC has between $1 - $10 million in assets and $1-$10 million in liabilities.  Goldking Holdings. LLC and Goldking Resources, LLC both have fewer than 49 creditors and Goldking Onshore Holdings, LLC has between 200–999 creditors.  Accordingly, both the Delaware Bankruptcy Court and either Proposed Bankruptcy Court are equally capable of efficiently administering the Debtors' chapter 11 cases.

46.        Moreover, these cases are not so far along and developed that a transfer would create a steep learning curve for the court which the cases are transferred or otherwise be disruptive to the development of the cases.  The Delaware Bankruptcy Court has only presided over the first day hearing and has only approved the limited relief necessary to keep the Debtors' operations running, much of which was approved on an interim only basis.  Additionally, as set forth in the DIP Financing Motion and the Ratification Agreement, the Debtors and Wayzata contemplate a drawn out sale process.  Pursuant to section 11 of the Ratification Agreement, the Debtors are not required to close sales of their assets until 150 days after the Petition Date. Ratification Agreement, §11.  This Motion to Transfer is being filed on November 7, 2013 – just eight days after the October 30, 2013 Petition Date.  If this Motion to Transfer is granted without delay, Debtors will still have the luxury of over four months to consummate the sale process after the cases are transferred.

47.      By the same token, the Debtors had done little to market their assets before the Petition Date.  Per Goldking Holdings' CEO Mr. Herbert, Debtors did not even commence marketing their assets until October 17, 2013 and the data room went live only on October 21, 2013. *See* Herbert Decl., ¶ 31.  If there somehow is an emergency here, it is a self-created one that should not impact this Court's assessment of whether to transfer the cases out of Delaware.

48.      Given the early nature of these cases, transferring the cases to either of the Proposed Bankruptcy Courts would not affect the efficiency of administering the Debtors' chapter 11 cases.

         *f.*     <u>The Necessity for Ancillary Administration in the Event of Liquidation</u>

49.      This factor also strongly militates in favor of transferring these cases to either of the Proposed Bankruptcy Courts.   Should liquidation become necessary, the determination of the necessity for ancillary administration hinges upon the location of the debtors' real estate, assets, and business.  *See In re Three Rivers Companies, LLC*, Case No. A09-61430-PWB, 2009 WL 6499339, at *4 (Bankr. N.D. Ga. Mar. 12, 2009) (where debtors' real estate and pending litigation is all located in another forum, factor favors transfer); *In re Newport Creamery Inc.*, 265 B.R. 614, 620-21 (Bankr. M.D. Fla. 2001) (finding that location of debtors' business is important to this factor).  Here, the Debtors' leased real estate, oil and gas interests, pending litigation, and business are all located in either Texas or Louisiana. Consideration of the necessity for ancillary administration, therefore, counsels in favor of transfer of these cases to either of the Proposed Bankruptcy Courts.

**The Interest of Justice Strongly Weighs in Favor of Transferring the Debtors' Cases to Either of the Proposed Bankruptcy Court**

50.     As discussed above, this Court may transfer venue if it is established that a transfer of venue is in the interest of justice **or** the convenience of the parties.  28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1).   Based on the foregoing, the Movants submit that the convenience of the parties strongly favors transferring venue to either of the Proposed Bankruptcy Court and, therefore, the Court need not consider the second prong.   While the Court, therefore, need not consider the interest of justice prong, as set forth below, the Movants submit that it also strongly weighs in favor of transferring the Debtors' cases to either of the Proposed Bankruptcy Courts.

51.     It is well established that courts have broad discretion to find that the "interest of justice" requires a change of venue, and the determination of whether venue may be changed is made on a case-by-case basis. *See In re Laguardia Assocs., L.P.*, 316 B.R. 832, 837 (Bankr. E.D. Pa. 2004) ("'the interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. . . .") (quoting *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (motions to transfer are determined on an "individualized, case-by-case consideration of convenience and fairness"); *In re Enron Corp.*, 274 B.R. at 349 ("The interest of justice prong is a broad and flexible standard that is applied based on the facts and circumstances of each case.")

52.     In applying this prong, a court "must consider what will promote the efficient administration of the estate, judicial economy, timeliness and fairness."  *Enron Corp.*,

274 B.R. at 349.  As discussed above in the section regarding the CORCO efficiency factor, the administration of the Debtors' estates will be best promoted by transferring these cases to either of the Proposed Bankruptcy Courts.  Furthermore, the Court in Enron also determined that in evaluating the interest of justice "it is also necessary to take account of the 'learning curve[,]' [which] involves consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue.  *See id*. at 349.

53.    While this Court has reviewed and familiarized itself with the Debtors first day pleadings, only one hearing has been held and much of the relief granted on the first day was interim relief.  In *Qualteq*, Judge Carey ruled that the interest of justice favored transferring the debtor's cases to Chicago even though the debtor had filed a motion to approve a disclosure statement and Judge Carey had presided over "routine matters, such as use of cash collateral, retention of estate professionals, maintenance of insurance coverage and the like."  *In re Qualteq, Inc*., 2012 WL 527669, *6 (Bankr. D. Del. Feb. 16, 2012).  Furthermore, the Debtors will not be prejudiced if this Court transfers venue to either of the Proposed Bankruptcy Courts, as that Court will promptly consider the Debtors' motions.  Additionally, given that the Texas Bankruptcy Court sits in the same city as the Debtors' principal place of business, that court may already have developed a learning curve regarding the Debtors, their creditors and the other parties-in-interest likely to appear in the Debtors' cases.

54.    The Debtors' travel and logistical delays and costs would be substantially decreased by allowing the cases to proceed in either of the Proposed Bankruptcy Courts. The Debtors' headquarters, located in Houston, Texas, likely house the majority of the books and records, remaining employees, assets, and other evidence that may become relevant in the bankruptcy cases. Transferring venue to the Texas Bankruptcy Court would eliminate the

difficulties and costs involved with transporting these people and items to the Delaware Bankruptcy Court, and transferring venue to the Louisiana Bankruptcy Court would significantly reduce the costs involved with transporting these people and items to the Delaware Bankruptcy Court. *See In re Innovative Commun. Co., LLC*, 358 B.R. 120, 128 (Bankr. D. Del. 2006).

55.        Ultimately, given the Debtors' ties to Texas and Louisiana, venue should be transferred to either of the Proposed Bankruptcy Courts because there is a "local interest in deciding local controversies at home." *In re Amendt*, 169 Fed. Appx. 93, 97 (3d Cir. 2006); *Sunarhauserman*, 131 B.R. at 363 ("Justice strongly favors transferring this case to the forum wherein the debtor is located."); *see also In re Vital Link Lodi*, 240 B.R. 15, 20 (Bankr. W.D. Mo. 1999) (proximity of debtor to bankruptcy court favors transfer.).  As set forth herein, the Debtors have strong ties to Texas and Louisiana and therefore the interests of justice are served by permitting these chapter 11 cases to be transferred to either of the Proposed Bankruptcy Courts.

## **NOTICE**

56.        Notice of the Motion has been provided, whether by facsimile, email, first class mail, or hand delivery, to certain parties in interest, including:  (i) the Debtors; (ii) proposed counsel for the Debtors; (iii) the Office of the United States Trustee for the District of Delaware; and (iv) those parties listed on the consolidated list of creditors holding the thirty largest unsecured claims against the Debtors, as identified in their chapter 11 petitions.  In light of the nature of the relief requested herein, the Movants submit that no other or further notice is required.

**NO PRIOR REQUEST**

57.     No prior request for the relief sought in the Motion to Transfer has been made to this or any other court.

**RESERVATION OF RIGHTS**

58.     In connection with making the following requests, Tallerine reserves and does not waive their right, without limitation, to move for dismissal for filing of the Petition herein for lack of good faith, to move to appoint a trustee or examiner, and to object to the power and jurisdiction of the Court to enter an order with respect to releases of estate claims and/or third party claims against non-debtor persons and entities.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Movants respectfully request that the Court (i) enter an order granting the relief requested in the Motion to Transfer, substantially in the form annexed hereto as **Exhibit A**; and (ii) grant such other and further relief as is just and proper.

Dated: November 7, 2013             MORRIS, NICHOLS, ARSHT & TUNNELL LLP
       Wilmington, Delaware

                                  */s/ Gregory W. Werkheiser*
                                  Derek C. Abbott (No. 3376)
                                  Gregory W. Werkheiser (No. 3553)
                                  Ann C. Cordo (No. 4817)
                                  1201 North Market Street, Suite 1600
                                  Wilmington, Delaware 19801
                                  Telephone:  (302) 658-9200
                                  Facsimile: (302) 658-3989

                                        - and -

                                  LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
                                  Stewart F. Peck
                                  Benjamin W. Kadden
                                  601 Poydras Street, Suite 2775
                                  New Orleans, LA 70130
                                  Telephone: (504)568-1990
                                  Facsimile: (504) 310-9195

                                  *Counsel for Leonard C. Tallerine, Jr. and Goldking LT Capital Corp.*

7746715.4