**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GOLDKING HOLDINGS, LLC, et al.,[1] | Case No. 13-12820 (BLS) |
| | Jointly Administered |
| Debtors. | **Ref. Docket Nos. 46, 47 and 48** |

## DEBTORS' OBJECTION TO MOTION OF LEONARD C. TALLERINE, JR. AND GOLDKING LT CAPITAL CORP. TO TRANSFER VENUE OF THESE CASES

Goldking Holdings, LLC ("GKH") and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") hereby object (this "Objection")[2] to the *Motion of Leonard C. Tallerine, Jr. and Goldking LT Capital Corp. to Transfer Venue of These Cases* [Docket No. 46] (the "Motion")[3] filed by Leonard C. Tallerine, Jr. ("Mr. Tallerine") and Goldking LT Capital Corp. (together, the "Movants"). In support of this Objection, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT[4]

1. The Movants have failed to meet (and cannot meet) their heavy burden to overcome the presumption that venue of the Chapter 11 Cases should be maintained in this

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Goldking Holdings, LLC (2614); Goldking Onshore Operating, LLC (2653); and Goldking Resources, LLC (2682). The mailing address for the Debtors is 777 Walker Street, Suite 2500, Houston, TX 77002.

[2] The Debtors reserve their rights to move to disqualify the Lugenbuhl, Wheaton, Peck, Rankin & Hubbard firm ("Lugenbuhl Wheaton") from representing the Movants on the grounds that Lugenbuhl Wheaton had previously represented the Debtors and the firm has neither sought nor obtained a waiver of such conflict from the Debtors.

[3] On November 18, 2013, less than an hour before the Debtors' deadline to object to the Motion, Galveston, County, Harris County, and Jasper County (collectively, the "Taxing Authorities") filed a joinder to the Motion [Docket No. 71] (the "Joinder"), requesting that venue of the Chapter 11 Cases be transferred to the Southern District of Texas. Notably, in support of their request, the Taxing Authorities fail to offer any additional support unique to them, but rather simply rely on the arguments advanced by the Movants in the Motion. The Debtors hereby object to the Joinder, as well.

[4] Capitalized terms used but not yet defined herein shall have the meanings ascribed to such terms below.

Court.  Venue is undeniably proper in Delaware and transferring the Chapter 11 Cases to Texas or Louisiana would neither serve the interest of justice, nor be more convenient for interested parties.  As a matter of law, the Debtors' choice of forum alone carries substantial weight, and the Movants' contention that "no reason exists that prevents these cases from proceeding in Texas or Louisiana" ignores the practical realities and purposes of the Chapter 11 Cases, and fails to acknowledge the substantial case law that supports maintaining a debtor's choice of venue.  Simply put, this Court should not unseat the Debtors' chosen (and presumptive) venue based on the request of a minority shareholder, entirely contingent and disputed creditor, and litigation counterparty.

2.      At their core, the Chapter 11 Cases are about implementing and effectuating an orderly sale process for the Debtors' assets as a going concern, to preserve and maximize value for all of the Debtors' stakeholders.  The focus of the Chapter 11 Cases is not the administration or development of assets located in Texas and Louisiana or other issues commonly associated with an operational restructuring; rather, the Debtors' restructuring is a financial restructuring, intended to transfer the Debtors' assets to the highest and best bidder through an open and transparent auction and sale process.  This Court is eminently capable of overseeing the going-concern sale of the Debtors' business regardless of whether the underlying assets are physically located in Delaware, and has done so in countless other chapter 11 cases.  The Debtors' physical property assets are spread over an area of hundreds of square miles and are not concentrated near any specific court, which is presumably the reason that even the Movants cannot decide precisely which forum is "correct" based on their flawed reasoning.  This Court is likewise able to adjudicate the potential state law issues in these cases that may arise in connection with the sale or otherwise, including the DIP Facility and the underlying credit

agreement, and disturbing the Debtors' choice of venue based on hypothetical disputes is not warranted.

3.       Transferring venue will provide no benefit to the real parties in interest in the Chapter 11 Cases.  Wayzata, the Debtors' largest stakeholder and secured lender, supports the Debtors' choice of venue in Delaware.  Aside from the Movants, who hold only contingent and disputed claims against the Debtors, and the Taxing Authorities, which offer no additional support for their position, none of the anticipated unsecured creditors in the Chapter 11 Cases have raised any issues about the Debtors' choice of venue.  Even so, Wayzata's secured debt claim of approximately $11.6 million dwarfs the aggregate amount of the remaining claims of the Debtors' unsecured creditors.  The Movants' reliance on the parties listed on the Top Thirty List—many of which have had, or will have in the short term, their claims at least partially satisfied pursuant to the Critical Vendor Order—and the parties captured on the Creditor Matrix—many of which are not likely current estate creditors—for a raw headcount of the location of the Debtors' creditor body is not only misleading, but an impermissible basis for transferring venue.  The physical location of these parties is largely immaterial as the Debtors' relatively few remaining creditors can easily monitor the progress of the Chapter 11 Cases through the website dedicated to these cases and, if desired, can participate telephonically in any hearings.  Thus, transferring the Chapter 11 Cases to Texas or Louisiana, and the delay, uncertainty, and added expense associated with any transfer, will not benefit the Debtors, their estates or creditors or parties in interest.

4.       For all of these reasons, the Motion should be denied and venue should remain in this Court.

## JURISDICTION

5.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6.       On October 30, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").  The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner in these cases.

7.       Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the Declaration of Edward Hebert in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 2] (the "First Day Declaration"), which is incorporated herein by reference.

8.       As set forth more fully in the First Day Declaration, since a turnover in management in December 2012, the Debtors have focused on trimming their overhead and right-sizing their cost structure, in an effort to stabilize what had been a volatile business under prior management.  In addition, the Debtors focused their efforts on studying and better understanding their portfolio of properties, which was a much-needed step to maximize the value of the Debtors' assets.    Among other things, the Debtors reconfigured their operational and

technological teams and instructed them to carefully evaluate the Debtors' properties.  In doing

so, the Debtors found significant value in these properties going forward, value which had not

previously been discovered due to the failure of prior management to appropriately study and

understand these properties.

9.      Around this time, the Debtors realized that they lacked sufficient liquidity

to continue to operate their business on a long-term basis, and that in order to maximize value, it

was in their best interests to commence a sale process for the Debtors' assets.  To facilitate that

process, on June 12, 2013, the Debtors retained Lantana Oil & Gas Partners, Inc. ("Lantana"), a

divestment and advisory firm focused on oil and gas asset packages, to assist the Debtors in

connection with the contemplated sale process.[5]

10.     The process of preparing for the Debtors' asset sale has taken longer than

anticipated, and additional liquidity is now required to bridge the Debtors through a sale process.

However, while the Debtors' pre-petition secured lender, Wayzata Opportunities Fund II, L.P.

("Wayzata"), was willing to fund a sale process, it indicated that it would not do so outside of

chapter 11 due to pending litigation and threats from the Movants to interfere with a sale process.

Accordingly, faced with their liquidity strain and the impending maturity date of their pre-

petition secured indebtedness, the Debtors commenced the Chapter 11 Cases in order to

implement an orderly sale process.  To facilitate this process, Wayzata has agreed to fund the

Debtors' post-petition financing needs through a secured debtor-in-possession financing facility

---

[5]     On November 7, 2013, Lantana advised the Debtors that it was resigning as the Debtors' asset sale advisor
because (a) Lantana did not want to subject itself to the time-keeping and other requirements associated with the
interim compensation process in chapter 11 cases and (b) of concerns that the Movants would oppose their retention
application and requests for compensation given the Movants' actions to date in the Chapter 11 Cases.  The Debtors
have recently engaged E-Spectrum Advisors LLC ("ESA") to serve as their asset sale advisor in connection with the
Chapter 11 Cases, and in the short term, anticipate filing an application with this Court to retain ESA.  Lantana has
assured the Debtors that it will fully cooperate in transitioning any work product and other materials associated with
the sale process to ESA.

(the "DIP Facility"), which the Court approved on an interim basis by order dated October 31, 2013 [Docket No. 26] (the "Interim DIP Order").

11.     The Debtors believe that the Chapter 11 Cases and the implementation of an orderly sale process, under the supervision of this Court, will permit the Debtors to consummate the sale of substantially all of their assets and maximize the value of their estates, for the benefit of all stakeholders.  As a result, the Debtors, with the prior assistance of Lantana and now with the assistance of ESA, are in the midst of a robust and aggressive marketing effort to sell the Debtors' assets.  In furtherance of these efforts, and to facilitate an organized and efficient diligence process, the Debtors have assembled diligence information in an electronic data room and prepared written business presentations for interested purchasers.  This marketing process formally commenced on October 17, 2013, and the data room went "live" on October 21, 2013.  To date, the Debtors and their advisors have contacted at least 50 potential bidders, half of which were subsequently registered for the data room.

12.     In furtherance of this sale process, and in accordance with the milestones provided for in the DIP Facility, the Debtors anticipate filing a motion with the Court to establish procedures for a fulsome bidding and auction process for their assets.

**ARGUMENT**

A.  There is No Dispute that Venue is Proper in the District of Delaware.

13.     The Debtors are each limited liability companies formed under the laws of Delaware.  Consequently, venue of the Chapter 11 Cases in Delaware is proper under 28 U.S.C. § 1408.  In re Innovative Commc'n Co., LLC, 358 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is appropriate in the state of incorporation, 28 U.S.C. § 1408(1), so venue is proper in Delaware with respect to the corporate Debtors.").  The Movants do not dispute that venue is proper.  Rather, they erroneously contend that the Debtors' choice of venue should be disturbed because

the assets being sold in the Chapter 11 Cases, and many of the Debtors' potential unsecured creditors, are located outside of Delaware.

B.  The Debtors' Choice of Forum is Entitled to
Substantial Weight and Should Not be Disturbed.

14.     Under 28 U.S.C. § 1412, the Court has discretion to transfer venue of a case "in the interest of justice or for the convenience of the parties."  It is well established, however, that there is a "strong presumption in favor of maintaining venue where the bankruptcy case is pending."  Hechinger Inv. Co. of Del., Inc. v. M.G.H. Home Improvement, Inc. (In re Hechinger Inv. Co. of Del., Inc.), 288 B.R. 398, 402 (Bankr. D. Del. 2003) (citation omitted); see also Ogblebay Norton Co. v. Port (In re Onco Invest Co.), 320 B.R. 577, 579 (Bankr. D. Del. 2005) (same); In re United Button Co., 137 F. 668, 671 (D. Del. 1904) ("It is not going far to say that on general principles of policy a court having taken cognizance of a [bankruptcy] case within its undoubted jurisdiction should not abandon to other tribunals the performance of the duty it has assumed unless it has clear warrant for so doing.").

15.     A debtor's choice of a proper venue is "entitled to great weight" in the consideration of change of venue motions.  In re Ocean Props. of Del., Inc., 95 B.R. 304, 305 (Bankr. D. Del. 1988); see also Transcript of Hearing at 92, In re Carey Limousine, L.A., Inc., Case No. 12-12664 (BLS) (Bankr. D. Del. Dec. 5, 2012) (noting that a debtor's choice of a proper venue is "afforded substantial deference");[6] In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).  Therefore, a court considering a venue transfer motion "should exercise its power to transfer cautiously, and the party moving for the transfer must show by a preponderance of the evidence that the case should be transferred."  In re Commonwealth Oil Ref. Co., Inc. (Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co., Inc.), 596 F.2d

---

[6]  A copy of the relevant portion of this hearing transcript is attached hereto as Exhibit A.

1239, 1241 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1045 (1980) ("<u>CORCO</u>") (internal citations omitted); <u>accord</u> <u>In re Fairfield Puerto Rico, Inc.</u>, 333 F. Supp. 1187, 1189 (D. Del. 1971) ("This Court should not freely abandon to any other district its duty to determine a matter clearly within its jurisdiction."); <u>In re Rehoboth Hospitality, LP</u>, Case No. 11-12798 (KG), 2011 Bankr. LEXIS 3992, at *3 (Bankr. D. Del. Oct. 19, 2011) ("The burden of proof is on the moving party requesting transfer.").  A debtor's choice of venue should only be disturbed when the balance weighs heavily in favor of the transfer.  <u>In re Onco Invest Co.</u>, 320 B.R. at 579; <u>see</u> <u>also</u> <u>In re Garden Manor Assocs.</u>, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988) ("[W]here a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities lean[] but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed.") (<u>quoting</u> 1 J. Moore, <u>Moore's Federal Practice</u> ¶ 0.145[5] at 1616 (2d ed. 1988)).  The moving party must show by a heavy preponderance that the case cannot be efficiently and fairly administered in the debtor's chosen forum.  <u>In re Denham Homes, LLC</u>, Case No. 10-03164, 2010 Bankr. LEXIS 1127, at *5 (Bankr. N.D. Ill. Apr. 12, 2010).

16.     These principles apply with even greater force when a Delaware corporate entity seeks the protection of Delaware courts.  There is a "fundamental legal tenet that every citizen of a state is entitled to take advantage of the state and federal judicial process available in that state."  <u>In re PWS Holdings</u>, Case No. 98-212-SLR, 1998 Bankr. LEXIS 549, at *14 (Bankr. D. Del. Apr. 28, 1998).  Further, "Delaware has an interest in protecting the rights of its citizens," and correspondingly, change of venue can only be granted upon a strong showing of equities favoring the transfer.  <u>Intel Corp. v. Broadcom Corp.</u>, 167 F. Supp. 2d 692, 706 (D. Del. 2001).

17.     The foregoing considerations strongly support the Chapter 11 Cases being prosecuted in Delaware.  The Movants conveniently ignore (and seemingly would ask this Court to ignore) these guiding principles as they fail to even mention them in the Motion.  Indeed, rather than attempting to rebut the "strong presumption" of maintaining venue in Delaware head on, the Movants side-step this critical consideration and simply argue that venue should simply be transferred somewhere else:  either Texas or Louisiana.  In essence, the Movants are making an "anywhere but here" argument.  That argument should be rejected for the reasons set forth in this Objection.

C.    <u>The Convenience of the Parties Weighs in Favor of Retaining Venue</u>.

18.     When a bankruptcy court is asked to transfer an entire bankruptcy case to another bankruptcy court, it must examine whether the transfer would be (a) in the interest of justice, or (b) the convenience of the parties.   28 U.S.C. § 1412.   When considering the "convenience of the parties," the court weighs the following six factors articulated by the Fifth Circuit in the <u>CORCO</u> case:

a)  The economic administration of the estate;

b)  The location of the assets;

c)  The proximity of creditors of every kind to the court;

d)  The proximity of the debtor to the court;

e)  The proximity of the witnesses necessary to the administration of the estate; and

f)  The necessity for ancillary administration if liquidation should result.

<u>CORCO</u>, 596 F.2d at 1247.  As discussed *infra*, the Movants have failed to meet their "heavy burden of proof . . . to demonstrate that the balance of convenience weighs in [their] favor."

Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.), 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982).  Consequently, the Motion must be denied.

                i.      *The Economic Administration of the Estate*.

          19.      The economic and efficient administration of the estate is the most important factor when considering a motion to transfer venue.  CORCO, 596 F.2d at 1247; In re Industrial Pollution Control, Inc., 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992).  On this factor, the Movants focus heavily on the experience and ability of the Texas and Louisiana Bankruptcy Courts to administer the Chapter 11 Cases.  The Debtors take no issue with the capabilities of the Texas and Louisiana Bankruptcy Courts and their ability to fully and fairly adjudicate these cases.  However, the existence of other competent bankruptcy courts is an insufficient basis to transfer the Chapter 11 Cases away from this Court, which is the Debtors' chosen venue (and supported by Wayzata) and which has already begun administering these cases by, among other things, familiarizing itself with and approving the DIP Facility on an interim basis.  Despite the Movants' suggestion that little progress has been made in the Chapter 11 Cases, as discussed above, the Debtors are in fact actively marketing their assets, having, among other things, already reached out to at least 50 potential bidders.  In addition, the Debtors have also filed a motion to establish a deadline to file proofs of claim in the Chapter 11 Cases, which motion is currently scheduled to be heard by the Court on December 5, 2013, and would establish a bar date so that the Debtors can administer the Chapter 11 Cases in a timely and efficient manner.

          20.      The Movants also assert that, because the Debtors' management team is located in Houston, Texas, both the Texas and Louisiana Bankruptcy Courts are a more efficient venue for the Chapter 11 Cases than this Court.  That assertion is plainly wrong.  The Debtors' Boards of Managers each consist of two members, one who resides in Texas, the Debtors' Chief Executive Officer, Edward Hebert ("Mr. Hebert"), and one who resides in New Jersey, the

Debtors' independent director, Eugene Davis ("Mr. Davis"), an experienced turnaround executive, who has served on the board of directors of various companies that have gone through the chapter 11 process.  Also, the Debtors (as well as Wayzata and the Movants) have retained Delaware counsel to represent them in connection with the Chapter 11 Cases.

21.    Transferring venue of the Chapter 11 Cases would require the Debtors and potentially other interested parties to retain new counsel, which would cause unnecessary delay in the administration of the Chapter 11 Cases and the sale of the Debtors' assets, and result in increased costs to the Debtors' estates, as such counsel would need to familiarize themselves with the Debtors' business and their assets.  Moreover, with the availability of modern technology, including, without limitation, this Court's advanced systems for telephonic attendance at hearings and electronic dockets and filing of pleadings, the administration of the Chapter 11 Cases in this Court will not be less efficient simply because the Debtors' management team is located in Texas, and no interested parties will suffer any inefficiency. Enron, 274 B.R. at 347 (noting that accessibility to the bankruptcy court for all interested parties is afforded by the availability of electronic dockets, the Bankruptcy Rules requiring notice to parties of any pleading directly impacting them, and the opportunity to appear in court by alternative means).

22.    Furthermore, because the implementation of the Debtors' asset sale, and the anticipated formulation of a chapter 11 plan of liquidation following the sale, depends on efforts and activities unrelated to the location of the Debtors' assets and management team, the Movants have failed to meet their substantial burden to demonstrate that there are economic and administrative efficiencies that support the Movants' proposed transfer of venue.  See In re Fairfield Puerto Rico, 333 F. Supp. at 1191 (maintaining venue in Delaware even though the

debtor's primary assets were located in Puerto Rico because the debtor's reorganization efforts were primarily unrelated to the location of such assets).

                ii.     *Location of the Debtors' Assets*

      23.    The location of the Debtors' assets does not support a transfer of venue. Enron, 274 B.R. at 348 ("[W]hile a debtor's location and the location of its assets are often important considerations in [a] single asset real estate case, these factors take on less importance in a case where a debtor has assets in various locations.").  Moreover, the contention that the location of a debtor's assets is dispositive in a chapter 11 case involving real property assets was long ago rejected by the United States District Court for the District of Delaware.  In In re Fairfield Puerto Rico, Inc., a Delaware corporation whose primary assets were a compost processing plant and office located in San Juan, Puerto Rico, filed for chapter 11 protection in Delaware.  333 F. Supp. at 1189.  The Municipality of San Juan, Puerto Rico moved for transfer of venue to Puerto Rico, and a trade creditor of the debtor moved for transfer of venue to Ohio. Id.  The debtor's principal office, payroll, accounts receivable, and payable ledgers were all in Puerto Rico, as well as several Puerto Rican officials expected to be necessary witnesses for the administration of the case.  Id. at 1190.  After weighing all of the relevant factors, the court declined to transfer venue, noting that the formulation of a chapter 11 plan depended primarily on efforts and activities unrelated to the location of estate assets, and thus "the movants have failed to carry their burden of proof in support of transfer." Id. at 1191.

      24.    A similar view was recently affirmed in In re Caribbean Petroleum, Corp., upon a motion to transfer venue of the case to Puerto Rico, the locus of the debtor's assets, including several petroleum facilities, as well as general unsecured creditors, while the holders of 70% of the debtor's secured debt supported venue in Delaware.  Judge Gross denied the motion, explaining:

Because venue is proper here, the Court will accord substantial weight in deference to debtors' choice of forum. . . .

The burden is on the movant to prove by a preponderance of the evidence that the transfer serves the interest of justice and the convenience of the parties.  Here, the facts strongly militate against transfer.

 . . .

*This is a sale case.  The Bankruptcy Code is applicable and will largely control the outcome of the bankruptcy case before the Court*.  And where Puerto Rican law, the Court is fully able to determine and apply Puerto Rican law.  As has been indicated, this court is no stranger to the laws of other jurisdictions.  When a Court's jurisdiction is largely based on the fact that a corporation's domicile here – that there is jurisdiction over a corporation's domicile here, it's clear that very often this court is asked to apply foreign law.

*I'm also moved by the fact that the movant, Hacienda, does not speak for other creditors* and the constituency that speak for other creditors, which is the official committee of unsecured creditors, opposes transfer as does AOT, the largest unsecured creditor and First Bank.  And cases supporting that important factor are <u>Cuarcao</u> (ph.) and <u>In re Fairfield Puerto Rican Inc</u>.

Transferring the case is fraught with risk for these debtors.  The sale process and DIP loan facility both largely hinge upon this case moving promptly and any delay regardless of how necessary it would be in the event of a transfer put these debtors at risk that they will not be able to accomplish the milestones that are really the center of the sale process and recovery for creditors.

Transcript of Hearing at 55-57, <u>In re Caribbean Petroleum Corp.</u>, Case No. 10-12553 (KG) (Bankr. D. Del. Sept. 8, 2010) (emphasis added).[7]

25.      Based on like reasoning, Judge Carey denied the motion of the City of Colorado Springs to transfer venue in <u>In re The Banning Lewis Ranch Company</u>, despite the fact that the debtors' real property assets were located in and around Colorado Springs and a majority of the debtors' trade creditors were located in Colorado.  Transcript of Hearing at 134-35, <u>In re</u>

---

[7]  A copy of the relevant portion of this hearing transcript is attached hereto as <u>Exhibit B</u>.

The Banning Lewis Ranch Co., Case No. 10-13445 (KJC) (Bankr. D. Del. Dec. 8, 2010).[8]  The

court recognized that the nature of the chapter 11 proceedings—a 363 sale process following a

national marketing effort—coupled with the lack of development activity at the debtors' physical

properties, weighed in favor of retaining venue in Delaware.  Id. at 135-36.

26.     Similarly, the success of the Chapter 11 Cases turn not on the day-to-day

operation of the Debtors' assets in Texas and Louisiana, but rather on the sale of those assets and

the financial restructuring of the Debtors.   See Garden Manor Assoc., 99 B.R. at 554-55

(rejecting a motion to transfer venue to the locus of property in a single asset realty case because

the economic administration of the estate turned on the debtor's ability to raise capital to fund a

plan of reorganization, renegotiate loan terms, locate a purchaser for the property, or effectuate a

cram down, rather than on the administration of the property itself).  In reality, the assets of the

Debtors' estates that are at stake in the Chapter 11 Cases are not the physical assets themselves,

but rather the proceeds from the sale of those assets, which can be administered in Delaware, in a

timely and efficient manner, with no prejudice to creditors and interested parties.

27.     Indeed, Delaware bankruptcy courts have a history of presiding over oil,

gas and energy industry asset sale cases and are thus well-positioned to successfully administer

the Chapter 11 Cases.  See, e.g., Tri-Valley Corp., Case No. 12-12291 (MFW) (Dec. 11, 2012)

(sale order entered approving the sale of the debtors' oil and gas lease interests and various

inventory); Pac. Energy Res., Ltd., Case No. 09-10785 (KJC) (Nov. 25, 2009; Dec. 23, 2009)

(orders approving the sale of the debtors' oil and gas interests); Semcrude, L.P., Case No. 08-

11525 (BLS) (Aug. 13, 2009) (order approving the sale of the debtors' petroleum business);

Flying J Inc., Case No. 08-13384 (MFW) (July 27, 2009) (same).  Indeed, this Court made clear

---

[8]  A copy of the relevant portion of this hearing transcript is attached hereto as Exhibit C.

at the first-day hearing that it is intimately familiar with the nature of the Debtors' business operations and the underlying assets.

        iii.    *Proximity of Creditors.*

      28.    In considering the proximity of creditors factor, the Court must not only consider the Movants' location and their position on venue, but must also consider the position of other interested parties, only one of whom—the Taxing Authorities—have joined in the Motion.  Furthermore, the Court should not ignore the fact that Wayzata, whose secured debt claim, at approximately $11.6 million, represents approximately 75% of the claims that existed *as of the Petition Date* against the Debtors, supports venue of the Chapter 11 Cases in this Court. In evaluating this factor, the Court must consider the "number of creditors *as well as* the amount of claims held by such creditors."  Enron, 274 B.R. at 345 (emphasis added).[9]  And even if this factor favored transferring venue—which it does not here—this factor would not alone be determinative.  In re Enron Corp., et al, 284 B.R. 376, 400 (Bankr. S.D.N.Y. 2002) (noting that "even if this factor were to strongly favor 'transferring venue, this factor alone would not be determinative'" (quoting In re Island Club Marina, Ltd., 26 B.R. 505, 507 (Bankr. N.D. Ill. 1983)).

      29.    The Movants point out that the entities on the Debtors' list of their thirty largest unsecured creditors as of the Petition Date (the "Top Thirty List") primarily reside in either Texas or Louisiana.  However, that is not the end of the inquiry.  As an initial matter, by any accounting, Wayzata's secured debt claim represents an overwhelming majority of the total amount of claims against the Debtors, and Wayzata fully supports the Debtors' choice of venue. This support carries significant weight, both practically and legally.  See Enron, 274 B.R. at 346;

---

[9]  It is worthy to note that the actual claims of the Movants' are entirely contingent and disputed.  The primary interest that the Movants have in the Chapter 11 Cases is a less than 6% membership interest in GKH.

In re Suzanne De Lyon, Inc., 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991) ("Of particular significance is the desire of the two secured banks to keep the case in New York.  As the creditors with the most to lose from this bankruptcy, they are the true interested parties in this case and their opinion as to what would be most convenient for them carries great weight since the possibility of a distribution to unsecured creditors, including the movants, is problematic."). Transferring venue on the eve of a final hearing on the DIP Facility will delay (if not entirely undermine) the Debtors' access to post-petition financing, and will increase the Debtors' costs associated with obtaining the liquidity necessary to successfully prosecute the Chapter 11 Cases. Approval of the DIP Facility in this Court in a timely and efficient manner will provide the Debtors with sufficient funds to operate their business while they implement a going concern sale for the benefit of all stakeholders.  Additionally, transferring venue of the Chapter 11 Cases could disrupt the Debtors' business relationships with their vendors (including vendor agreements and trade credit), who could take a wait and see approach with the Debtors given the delay and uncertainty that would necessarily result from any venue transfer.

30.    Moreover, many of the entities on the Top Thirty List are Critical Vendors (as defined in the Critical Vendor Order)[10] and have been, or will be in the short term, paid pursuant to first-day relief approved by the Court.  In the Debtors' business judgment, these payments are necessary to ensure that the Debtors continue to receive those services that are essential to the continued and uninterrupted operation of the Debtors' business.  As a result of these payments, the Critical Vendors will no longer have claims against the Debtors' estates, and

---

[10]   "Critical Vendor Order" means the Court's *Interim Order, Pursuant to Sections 105(a), 363, 364, 503(b), 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Obligations of Critical Vendors and (II) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers* [Docket No. 24].

therefore their claims on the Top Thirty List should not serve as the primary support for the Movants' efforts to disturb the venue of the Chapter 11 Cases.

31.     For example, of the approximately $1.66 million in claims on the Top Thirty List, substantial portions of these claims have been, or will be in the short term, paid pursuant to the Critical Vendor Order.  Likewise, the Debtors estimate that, as of the Petition Date, they owed approximately $1.549 million in accrued but unpaid amounts on account of Royalties, Overriding Royalty Interests and Working Interest Owner Payments (each as defined in the Royalties Motion),[11] and approximately $425,000 in accrued but unpaid Taxes (as defined in the Taxes Motion).[12]   In accordance with the orders approving those motions, all of these obligations will be satisfied in the ordinary course of business.  After taking into account these payments or anticipated payments, the economic reality of the Chapter 11 Cases is that Wayzata's secured debt claim represents approximately 90% of the outstanding claims against the Debtors' estates.

32.     In addition to the Top Thirty List, the Movants rely heavily on the creditor matrix filed by the Debtors [Docket No. 12] (the "Creditor Matrix") in support of the Movants' assertion that most of the Debtors' creditors are located in Texas or Louisiana.  In doing so, the Movants ignore the nature and purpose of the Creditor Matrix, which is intended to give notice to potential parties in interest of the Chapter 11 Cases and certain related deadlines and events, including the anticipated bar date and the sale of the Debtors' assets.  It by no means purports to serve as a *de facto* schedule of assets and liabilities, and undoubtedly many of the entities on the

---

[11]  "Royalties Motion" means the *Debtors' Motion for an Order, Pursuant to Sections 105(a) and 366(b) of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Obligations on Account of Royalties, Overriding Royalty Interests, and Working Interest Owner Payments, and (II) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers* [Docket No. 7].

[12]  "Taxes Motion" means the *Debtors' Motion for an Order, Pursuant to Sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Taxes and Related Obligations and (II) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers* [Docket No. 6].

Creditor Matrix will not file—and have no reason to file—claims against the Debtors and their estates. Indeed, the declaration of Mr. Hebert accompanying the Creditor Matrix provides, in pertinent part, that "certain of the parties included in the [Creditor Matrix] may not hold outstanding claims as of the [Petition Date] . . . and therefore may not be creditors." It would be inappropriate for venue of the Chapter 11 Cases in this Court to be set aside (and the Movants to overcome their heavy burden) based on the location of entities that may never have an interest or stake in these cases.

33. Ultimately, the Movants' arguments here rely on a raw headcount, and fail to look behind the numbers. Several courts in this district and elsewhere have rejected that precise rationale, focusing instead on the location of the major debt holders, professionals and restructuring efforts. See Transcript of Hearing at 96, In re Carey Limousine, L.A., Inc., Case No. 12-12664 (BLS) (Bankr. D. Del. Dec. 5, 2012) (denying a motion to transfer venue in a financial restructuring because the "significant participants in a Chapter 11 process . . . are usually not individual holders of claims"); In re Fairfield Puerto Rico, Inc., 333 F. Supp. at 1190 (retaining the case in Delaware, even though 21 of 23 general unsecured claimants were in Puerto Rico, because the efforts and activities necessary for a successful plan were near Delaware); Transcript of Hearing at 57, In re Caribbean Petroleum Corp. (denying motion to transfer venue where the central focus of the case was a sale of the debtor's business); see also In re Walston Airbusiness, Inc., 26 B.R. 955, 958 (Bankr. N.D. Ill. 1983) (denying motion to transfer venue where numerical count of creditors favored transfer but value of creditors' claims favored retention).

34. Moreover, the notion that this Court is less accessible to creditors than either the Texas or Louisiana Bankruptcy Courts ignores the fact that the docket is available free

of charge on the internet, meaning that all pleadings and notices filed in the Chapter 11 Cases are readily accessible.  Also, the Local Rules of this Court expressly provide that claimants may participate *pro se* and telephonically at any hearing on an objection to their claim.  Del. Bankr. L.R. 3007-1(g).  Such ease of information and access clearly enhances the ability of creditors to participate in the Chapter 11 Cases when they so desire.

   35. With respect to the Credit Documents (as defined in the Interim DIP Order), the Movants assert that the Texas choice of law provision contained therein weighs in favor of transfer of venue to Texas.  First, this argument ignores the fact that Wayzata fully supports the Chapter 11 Cases being in Delaware.  Second, the Movant is not a party to the Credit Documents, and therefore it is not the Movants' place to interpret the "expectations of the parties" to the agreement, when the parties have spoken for themselves in favor of prosecuting the Chapter 11 Cases in Delaware.  Third, to the extent there is any dispute under the Credit Documents that require the application of Texas state law, this Court is more than capable of applying Texas law to the dispute.  As another bankruptcy court stated when faced with a similar argument:

> Movants cite Arizona landlord lien law as having applicability here. Presumably, their point is that an Arizona court would be better positioned to apply that law.  As a general matter, this court has no quarrel with that proposition.  However, as with other aspects of the motion, no specifics are offered as to the complexity of the law, problems with interpretation or application, or even precisely where it is implicated in addressing the stay violation claims of the Complaint.  No special public policy of Arizona or familiarity of an Arizona judicial officer with the current dispute is cited, nor is there any assertion of a local interest or a characterization of this dispute as a "local controversy."  Similarly, this court can enforce its judgment if one should eventuate, not unlike a bankruptcy court in another venue.

Permalife Prods., LLC v. TSJ Dirt, LLC (In re Permalife Prods., LLC), 432 B.R. 503, 519 (Bankr. D.N.J. 2010); see also Transcript of Hearing at 135-36, In re The Banning Lewis Ranch

Co., Case No. 10-13445 (KJC) (Bankr. D. Del. Dec. 8, 2010) (denying motion to transfer venue despite the possibility that issues of Colorado land use law might arise). Like the movants in Permalife, the Movants have failed to proffer any specific complexity with the application or interpretation of Texas law that this Court could not ably handle, and this Court is more than familiar with credit agreements. Finally, when it comes to choice of law provisions, the Movants fail to note that the Debtors' limited liability company agreements are governed by Delaware law, and any claims of a covered person for indemnification pursuant to those agreements are subject to the jurisdiction of a Delaware court.

iv.  *The Proximity of the Debtors and Witnesses Necessary to the Administration of the Estate*.

36.    As discussed in CORCO, the Court's consideration of the location of the Debtors should focus on the proximity to the Court of the Debtors' employees who must appear in court, not with the employees who conduct the day-to-day business activities of the Debtors. CORCO, 596 F.2d at 1248. The Debtors' Boards of Managers each consist of two members: Mr. Hebert and Mr. Davis. Mr. Hebert's office is in Texas, and Mr. Davis' office is located in New Jersey. The Debtors also have retained Delaware counsel to assist them in their chapter 11 efforts.

37.    The only witnesses whose locations are anticipated to be relevant to the prosecution of the Chapter 11 Cases are those that pertain to the going-concern sale of the Debtors' assets, the Debtors' financial restructuring, or the distribution of sale proceeds. To the extent that the in-person attendance of the Debtors' officers or managers is required, Mr. Hebert and Mr. Davis are ready, willing and able to travel to Delaware for any proceedings in which they are needed. Indeed, Mr. Hebert has already appeared before this Court in connection with the first-day hearing, was present in Delaware for the initial debtor interview performed by the

Office of the United States Trustee, and will be in attendance at the hearing on this Motion and the final hearing on the DIP Facility.  In addition, with the exception of these hearings and any held in connection with the sale process, the Debtors do not anticipate that their financial restructuring will require repeated testimony from Mr. Hebert or Mr. Davis.  The infrequent travel required of Mr. Hebert and Mr. Davis can hardly sustain the Movants' proposed disruption of venue in Delaware.

38.    Finally, the Movants argue that the Texas Bankruptcy Court is a more convenient venue than Delaware for the ongoing litigation against the Movants and other defendants in Texas.  As an initial matter, the Texas Litigation has been stayed by the commencement of the Chapter 11 Cases.[13]  More importantly, the primary objective of the Chapter 11 Cases is to effectuate a going-concern sale of the Debtors' assets, to maximize value for all stakeholders.  Any issues related to the allegations and claims in the Texas Litigation will be dealt with at the appropriate time, and are not the focus of the Chapter 11 Cases.

v.    *The Necessity for Ancillary Administration if Liquidation Should Result.*

39.    The potential need for ancillary administration in the event of liquidation does not support transferring this matter to Texas or Louisiana.  As the courts in CORCO, Enron and Fairfield Puerto Rico recognized, "anticipation of the failure of the [Chapter 11] proceeding is an illogical basis upon which to predicate a transfer."  CORCO, 596 F.2d at 1248; see also Enron, 274 B.R, at 349; In re Fairfield Puerto Rico, Inc., 333 F. Supp. at 1191.  Indeed, "[t]his factor is often discounted by the courts."  Enron, 274 B.R. at 343 n.11.  The Debtors are actively working towards implementing the planned sale process, and it is not necessary for this Court to

---

[13]  Even some of the claims within the Texas Litigation are governed by Delaware law, such as Mr. Tallerine's alleged indemnification claims.  As a former officer of a Delaware limited liability company, Mr. Tallerine should have been aware of the possibility that he might be called before a Delaware court.

contemplate the failure of the Debtors' chapter 11 efforts.  See In re Fairfield Puerto Rico, Inc.,

333 F. Supp. at 1191.  Furthermore, as noted above, the Debtors' assets are in Texas and

Louisiana, spread over an area of hundreds of square miles, and are not concentrated near any

specific court.  Consequently, whether liquidation proceedings were held in Delaware or

elsewhere, the proceedings would be located at a significant distance from the majority of those

assets.  With respect to any assets remaining after the Debtors' going-concern sale, the assets are

unlikely to pose an administrative burden or give rise to ancillary proceedings that would be

more efficiently dealt with in Texas or Louisiana.  Accordingly, this factor does not favor

transfer of venue.

    D. The Interest of Justice is Not Served By Transferring Venue.

    40. The "interest of justice" component of the test concerning transfer of

venue is "a broad and flexible standard which must be applied on a case-by-case basis.  It

contemplates a consideration of whether transferring venue would promote the efficient

administration of the bankruptcy estate, judicial economy, timeliness, and fairness." Gulf States

Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d

1384, 1391 (2d Cir. 1990).  It also "encompasses . . . inquiry as to the forum which facilitates the

efficient, proper and expeditious functioning of the courts."  In re Pinehaven Assocs., 132 B.R.

982, 990 (Bankr. E.D.N.Y. 1991).

    41. The Movants cite to In re Qualteq, Inc. to support their assertion that

transfer of venue in the Chapter 11 Cases is in the interest of justice.  Case No. 11-12572 (KJC),

2012 Bankr. LEXIS 503 (Bankr. D. Del. Feb. 16, 2012).  Unlike the instant case, all but one of

the Qualteq debtors were Illinois entities, and the debtors had more than 1,250 employees

working for them in Illinois, unlike here where the Debtors only have 8 employees and 3

temporary workers.  Id. at *4-6, *8, *19.  But perhaps the most significant distinction is that the

<u>Qualteq</u> debtors were the subject of a host of Illinois litigation, including:  a lawsuit against its owners that had been reduced to a $43 million dollar judgment and was in post-judgment proceedings; the chapter 7 filing of its owners; a lawsuit by the FDIC against two of the owners; and at least two matters referred to the U.S. Attorney's Office in Chicago for a review of potential criminal conduct by the owners.  <u>Id.</u> at *11-14.  And the debtors' Chief Restructuring Officer openly acknowledged that creating distance between their operations and the myriad of litigation was a key factor in the decision to file in Delaware, which motivation was an important factor in granting the motion to transfer.  <u>Id.</u> at *19-21.

42.   Here, the Debtors are not using this Court to escape their responsibilities in the single litigation pending in Texas, which is presently stayed (as it would be regardless of which jurisdiction the Debtors chose).  Rather, they are all Delaware entities availing themselves of the rights and protections afforded to them by their Delaware citizenship to conduct an appropriate and open sale process.  <u>See</u> <u>Intel Corp. v. Broadcom Corp.</u>, 167 F. Supp. at 706; <u>In re PWS Holdings</u>, Case No. 98-212-SLR, 1998 Bankr. LEXIS 549, at *14.  Wayzata, whose claims, by any calculation, far exceed those of any unsecured creditors or the Movants' contingent and disputed claims, supports these cases remaining in Delaware, and other than the Taxing Authorities, which offer no additional support for their position, no other interested party has joined in the Motion.  The Debtors are not passively hiding from their obligations in a Delaware bankruptcy court, but rather are seeking to aggressively market their assets on a going-concern basis under the supervision of this Court (where venue is without question appropriate under applicable bankruptcy law), to maximize stakeholder recoveries.

43.   Unlike in <u>Qualteq</u>, the Debtors' choice of venue in Delaware will not remotely frustrate "the efficient, proper and expeditious functioning of the courts."  <u>In re</u>

Pinehaven Assocs., 132 B.R. at 990 (noting that while convenience of the parties or in the interest of justice is disjunctive, "[a]s a practical matter, in most cases . . . if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer").  Furthermore, in Qualteq, it was argued and the Court felt it was clear that the Illinois bankruptcy court was the appropriate alternative to Delaware.  By contrast, in this case even the Movants cannot decide precisely which proposed alternative forum is "correct." Thus, Qualteq is of no moment to the Court's inquiry here, and the interest of justice weighs in favor of maintaining venue of the Chapter 11 Cases in this Court.

## CONCLUSION

44.    The Movants have failed to meet their heavy burden that transferring venue of the Chapter 11 Cases is in the interest of justice or the convenience of the parties. Venue of the Chapter 11 Cases is undeniably proper in Delaware.  At their core, the Chapter 11 Cases are a financial restructuring through a going-concern sale of the Debtors' assets, in an open and transparent auction and sale process, under the supervision of this Court.  Wayzata, the Debtors' secured lender, whose claim represents the vast majority of the claims against the Debtors, also seeks to have the Chapter 11 Cases remain in Delaware.  Disposition of the assets of these Delaware limited liability companies in a Delaware bankruptcy court will ultimately benefit all stakeholders.  Transferring the Chapter 11 Cases to Texas or Louisiana, and the delay, uncertainty, and added expenses associated with such a transfer, will not benefit the Debtors or their stakeholders.

WHEREFORE, the Debtors request entry of an order denying the Motion and granting to the Debtors such other and further relief as is just and proper.

Dated: November 18, 2013          YOUNG CONAWAY STARGATT & TAYLOR, LLP
      Wilmington, Delaware

                                                  */s/ Robert F. Poppiti, Jr.*
                                                  Robert S. Brady (No. 2847)
                                                  Edmon L. Morton (No. 3856)
                                                  Robert F. Poppiti, Jr. (No. 5052)
                                                  Michael S. Neiburg (No. 5275)
                                                  1000 N. King Street, Rodney Square
                                                  Wilmington, Delaware 19801
                                                  Telephone:  (302) 571-6600
                                                  Facsimile:  (302) 571-1253

                                                  Proposed Counsel for the Debtors